**[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 363.]**

**CINCINNATI SCHOOL DISTRICT BOARD OF EDUCATION, APPELLANT, *v.***

**HAMILTON COUNTY BOARD OF REVISION ET AL., APPELLEES.**

**[Cite as *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*,**

**2000-Ohio-452.]**

*Taxation–Real property valuation–Board of revision does not have authority to vacate a void decision after the appeal time has expired.*

(No. 99-82–Submitted June 23, 1999–Decided January 5, 2000.)

APPEAL from the Board of Tax Appeals, No. 98-J-481.

———————

{¶ 1} On March 27, 1996, appellee Candlewood, Ltd. received title to the real property at issue in a two-step transaction. In step one, the property was transferred from Andrew J. Green, trustee, to Steven R. Smith, trustee. The conveyance fee statement filed with the Green-Smith transaction set forth a total consideration of $1,250,000. On the same day, in step two, the property was transferred from Steven R. Smith, trustee, to Candlewood. Candlewood filed a statement claiming that the transfer to it was exempt from the real property conveyance fee.

{¶ 2} On April 18, 1996, Candlewood recorded a mortgage on its property to Anthony M. Sansalone, trustee, in the amount of $55,000. When the mortgage to Sansalone was recorded, a conveyance fee form erroneously was filed with the auditor's office showing a transfer from Candlewood to Sansalone for a consideration of $55,000.

{¶ 3} On March 26, 1997, the Cincinnati School District Board of Education ("BOE") filed a valuation complaint for tax year 1996 seeking to increase the valuation for the property from $816,000 to $1,250,000, based on the March 27, 1996 sale price. The complaint form was filled out showing Sansalone

as the owner of the property. Notice of the filing of the complaint was sent to Sansalone by the Hamilton County Board of Revision ("BOR") on March 31, 1997. Notice of the hearing set for July 2, 1997, was also sent to Sansalone. No notices were sent to Candlewood by the BOR.

{¶ 4} No one appeared at the BOR's July 2, 1997 hearing representing either Sansalone or Candlewood. At the July 2, 1997 hearing, the BOR approved the increase in valuation requested by the BOE. Notice of the increased valuation was apparently sent to Sansalone on August 18, 1997, as evidenced by a certified mail receipt signed on his behalf on August 20, 1997, that refers to the case number and a July 2, 1997 date. No copy of the August 18, 1997 decision of the BOR is contained in the record; however, the record does include a letter, dated February 25, 1998, addressed to Sansalone from the BOR that purports to be a final notice of its action increasing the valuation. Nothing further concerning this letter appears in the record. Because the parties discuss only the August 18, 1997 decision, we will do likewise.

{¶ 5} A representative of the auditor's office said that she became aware of the problem concerning ownership on March 5, 1998, and faxed information to Candlewood. Further investigation by the auditor's office revealed that the 1996 and 1997 tax bills had been mailed to Candlewood. On March 16, 1998, a notice was mailed to Candlewood stating that a complaint had been filed against its property for tax year 1996. In response to the notice, Candlewood filed a countercomplaint asking that the 1996 complaint be dismissed and alleging that the true value of the property was $816,000. Candlewood also filed a motion with the BOR requesting that it dismiss the BOE's complaint and vacate its prior order.

{¶ 6} A hearing was held by the BOR on April 30, 1998. Candlewood was represented at the hearing and a witness testified on its behalf concerning valuation of the property. At a meeting on May 15, 1998, the BOR voted to overturn its prior decision and to reinstate the prior valuation of $816,000. On June 1, 1998, the BOR

2

sent letters to the parties giving them notice of its decision. The BOE filed a timely notice of appeal with the Board of Tax Appeals ("BTA").

{¶ 7} The BOE filed a motion with the BTA to vacate the decision of the BOR for lack of jurisdiction. The BTA denied the BOE's motion and dismissed the appeal, finding that the BOR did not have jurisdiction to render its initial order on August 18, 1997, increasing the property value, and ordered the auditor to list and assess the property for tax year 1996 consistent with the BTA's decision.

————————————

*Wood & Lamping, L.L.P.*, and *David C. DiMuzio*, for appellant, Cincinnati School District Board of Education.

*Keating, Muething & Klekamp, P.L.L.*, *Kenneth P. Kreider* and *Dwight A. Packard II*, for appellee Candlewood, Ltd.

————————————

***Per Curiam.***

{¶ 8} The BOE contends that the BTA had no authority to set aside the BOR's order of August 18, 1997. We agree.

{¶ 9} A timely complaint against the valuation of the property was filed by the BOE seeking an increase in taxable value of $151,900 for tax year 1996. R.C. 5715.19(B) provides that when a complaint is filed by someone other than the owner and the amount of the stated undervaluation is at least $17,500 the auditor is to give notice of the complaint to the property owner. R.C. 5715.19(B) further provides that within thirty days after receiving the notice the property owner may file a complaint objecting to the claim of undervaluation and be made a party to the action. R.C. 5715.19(C) also provides that the board of revision shall notify the property owner at least ten days prior to a hearing of its time and place. In addition to the notice requirements of R.C. 5715.19, R.C. 5715.12 provides that the board of revision shall not increase any valuation without giving notice to the person in whose name the property affected is listed and affording him or her the opportunity

to be heard. Finally, when the board of revision renders its decision, R.C. 5715.20 requires that it give notice of its action by certified mail to the person in whose name the property is listed.

{¶ 10} In this case, none of the required notices listed above was given to Candlewood in a timely fashion either before the hearing on July 2, 1997, or the decision of August 18, 1997.

{¶ 11} The BOE contends that the BOR's actions were proper because the BOE's complaint named as property owner, and notices were given to, the person listed as owner on the auditor's records. A review of the various provisions of R.C. Chapter 5715 shows that different terms are used to describe the person to whom the required notice is to be given. R.C. 5715.19 requires notice to the "property owner"; R.C. 5715.12 requires notice to be given "to the person in whose name the property affected * * * is listed"; R.C. 5715.20 requires notice to "the person in whose name the property is listed."

{¶ 12} In *State ex rel. Rolling Hills Local School Dist. Bd. of Edn. v. Brown* (1992), 63 Ohio St.3d 520, 521, 589 N.E.2d 1265, 1266, we stated, "The auditor prepares the tax list pursuant to R.C. 319.28. On the tax list, he records, *inter alia*, all the parcels in the county, the names of their owners, and the taxing district in which each parcel is located." R.C. 319.20 describes how the auditor shall transfer ownership of land on the tax list: "[T]he county auditor shall transfer any land * * * charged with taxes on the tax list, from the name in which it stands into the name of the owner, when rendered necessary by a conveyance * * *." See, also, R.C. 323.17. Clearly, the auditor's tax list is to contain the name of the owners. It is presumed that the auditor does his or her job correctly and that the tax list contains the correct names of the owners of the property. However, as demonstrated by the facts in this case, when a complainant filing a complaint for valuation of real property relies upon the auditor's tax list he or she does so at his or her peril. If the auditor's tax list is not correct and a complainant files a complaint

4

listing an incorrect name, then the notices given by the board of revision will be given to the wrong persons, the notice requirement of R.C. Chapter 5715 will not be met, and the actual owner will not receive any of the required notices.

{¶ 13} The giving of notice to a person who is incorrectly listed on the auditor's tax list as the owner does not meet the notice requirements of R.C. Chapter 5715.  In *Columbus Apartments Assoc. v. Franklin Cty. Bd. of Revision* (1981), 67 Ohio St.2d 85, 89-90, 21 O.O.3d 54, 57, 423 N.E.2d 147, 150, we stated, "In that it is the owner's, not the school board's, property which is the subject of the complaint and evaluation proceeding before a board of revision, the owner is an indispensable party to that proceeding."

{¶ 14} The consequences of not giving notice to an indispensable party, like the actual owner, were set forth in *Lincoln Tavern, Inc. v. Snader* (1956), 165 Ohio St. 61, 64, 59 O.O. 74, 75-76, 133 N.E.2d 606, 610, where we stated, "It is axiomatic that for a court to acquire jurisdiction there must be a proper service of summons or an entry of appearance, and a judgment rendered without proper service or entry of appearance is a nullity and void."  Without the required notices being given to Candlewood, the BOR acquired no jurisdiction.

{¶ 15} Because the notices required by R.C. Chapter 5715 were not given to Candlewood prior to the BOR's July 2, 1997 hearing and after its August 18, 1997 decision, and no voluntary appearance was made by Candlewood, the BOR's August 18, 1997 decision is a nullity and void as regards Candlewood.  As one Texas appellate court so aptly stated concerning a void judgment, "[i]t is good nowhere and bad everywhere." *Dews v. Floyd* (Tex.Civ.App.1967), 413 S.W.2d 800, 804.

{¶ 16} Almost a year after the original complaint had been filed the BOR discovered that no notices had been sent to Candlewood.  In an attempt to remedy the lack of notice, the BOR sent a letter to Candlewood on March 16, 1998,

notifying it that a complaint had been filed by the BOE. On April 7, 1998, the BOR notified Candlewood that a hearing was to be held on April 30, 1998.

{¶ 17} A review of the relevant statute shows that neither of the notices sent to Candlewood by the BOR was timely. R.C. 5715.19 requires that the notice of the filing of the complaint was to have been sent to Candlewood by April 30, 1997. No notice of the filing of the BOR complaint was sent to Candlewood until March 16, 1998. In addition, Candlewood was never notified of the original BOR hearing on July 2, 1997. No notice of any hearing was sent to Candlewood until April 7, 1998.

{¶ 18} R.C. 5715.20 provides that any decision of the BOR rendered on a complaint filed under R.C. 5715.19 is to be sent to the person in whose name the property is listed. The notice of the result of the July 2, 1997 hearing was sent out August 18, 1997, but no copy was sent to Candlewood.

{¶ 19} R.C. 5717.01 and 5717.05 permit an appeal of a board of revision decision to be taken either to the BTA or common pleas court within thirty days. No appeal of the BOR's August 18, 1997 decision was filed within thirty days. This case presents the question whether a board of revision can vacate a void decision after the time for appeal of the decision has expired.

{¶ 20} When it eventually was informed of the BOR's 1997 decision, Candlewood filed a countercomplaint on April 14, 1998, requesting that the complaint filed by the BOE be dismissed for lack of jurisdiction. In addition Candlewood also filed a motion requesting the BOR to dismiss the BOE complaint and to vacate its prior order. The BOR granted Candlewood's requests and vacated its August 18, 1997 decision and reinstated the prior valuation.

{¶ 21} A board of revision is a creature of statute and is limited to the powers conferred upon it by statute. *Morgan Cty. Budget Comm. v. Bd. of Tax Appeals* (1963), 175 Ohio St. 225, 24 O.O.2d 340, 193 N.E.2d 145, paragraph three of the syllabus. *Steward v. Evatt* (1944), 143 Ohio St. 547, 28 O.O. 472, 56 N.E.2d

159, paragraph one of the syllabus. The authority granted to a board of revision by R.C. 5715.01 is to "hear complaints and revise assessments of real property for taxation." We know of no statutory authority for a board of revision to vacate a void decision after the appeal time has expired. Having no statutory authority to vacate void decisions after the expiration of the appeal time, does a board of revision have nonstatutory authority to vacate a void decision after the appeal time has expired?

{¶ 22} In *Patton v. Diemer* (1988), 35 Ohio St.3d 68, 518 N.E.2d 941, the defendant, using Civ.R. 60(B), sought to vacate a judgment that was void *ab initio*. The plaintiff contended that the defendant had failed to demonstrate any of the grounds for relief prescribed by Civ.R. 60(B). We held that the court could vacate the judgment, stating, "The authority to vacate a void judgment is not derived from Civ.R. 60(B) but rather constitutes an inherent power possessed by Ohio courts." Paragraph four of the syllabus. See, also, Staff Notes to Civ.R. 60(B). In *Van DeRyt v. Van DeRyt* (1966), 6 Ohio St.2d 31, 36, 35 O.O.2d 42, 45, 215 N.E.2d 698, 704, we stated, "A court has an inherent power to vacate a void judgment because such an order simply recognizes the fact that the judgment was always a nullity." The term "inherent power" used in the two preceding cases is defined in Black's Law Dictionary (6 Ed.1990) 782 as "[a]n authority possessed without its being derived from another. A right, ability, or faculty of doing a thing, without receiving that right, ability, or faculty from another."

{¶ 23} While we have recognized the inherent power of courts to vacate void judgments, we have recognized the inherent power of administrative boards to reconsider their decisions only in very limited circumstances. In *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co*. (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590, paragraph three of the syllabus, we held that prior to the actual institution of an appeal or expiration of the time for appeal, administrative agencies generally "have inherent authority to reconsider their own decisions since the power

to decide in the first instance carries with it the power to reconsider." See, also, *Natl. Tube Co. v. Ayres* (1949), 152 Ohio St. 255, 262, 40 O.O. 312, 315, 89 N.E.2d 129, 133; *Tims v. Holland Furnace Co*. (1950), 152 Ohio St. 469, 40 O.O. 487, 90 N.E.2d 376*; State ex rel. Borsuk v. Cleveland* (1972), 28 Ohio St.2d 224, 57 O.O.2d 464, 277 N.E.2d 419. Although the BOR may have had the inherent power to reconsider its August 18, 1997 decision before the appeal time expired, the BOR decision vacating the August 18, 1997 decision under consideration here came after the appeal time for the August 18, 1997 decision had expired. We find no inherent power for a board of revision to vacate a decision, even a void decision, after the appeal time has run. If a board of revision were to review its prior decision after the appeal time had expired, the board would in effect be acting as a reviewing court for its own prior decision. Only the BTA and the common pleas courts have been granted authority under R.C. 5717.01 and 5717.05 to review board of revision decisions, and even they can review decisions only where the appeals have been filed in a timely manner.

{¶ 24} While the BTA had jurisdiction to review the BOR's June 1, 1998 decision, it had no jurisdiction to review the BOR's August 18, 1997 decision because the thirty-day appeal time for the August 18, 1997 decision had expired. Thus, the only issue that could be considered by the BTA was whether in its June 1, 1998 decision the BOR had authority to vacate its order of August 18, 1997. For the reasons set forth above we find that neither the BOR nor the BTA had authority to consider the BOR's decision of August 18, 1997. Therefore, the BOE's motion to vacate the BOR's order of June 1, 1998, should have been granted.

{¶ 25} We express no opinion on the BOE's contention that the proper relief for Candlewood is under R.C. 2723.01.

{¶ 26} Accordingly, for all the foregoing reasons, we find that the decision of the BTA is unreasonable and unlawful, and it is reversed.

*Decision reversed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK, J., concurs separately.

LUNDBERG STRATTON, J., dissents.

———————————

**Cook, J., concurring.**

{¶ 27} I concur with the majority's conclusion that the failure to provide the required notices to Candlewood deprived the BOR of jurisdiction to make its original decision increasing the valuation of Candlewood's property. These procedural failures rendered the BOR's original August 18, 1997 valuation increase a nullity. The dissent believes that under *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590, the BOR retained jurisdiction to set aside or reconsider this valuation since the time for appealing that order had been tolled due to the agency's failure to notify Candlewood of its decision. I agree with the majority, however, that since the BOR is a creature of statute, its authority to reconsider its decisions is limited to the powers conferred upon it by statute. And no authority existed under R.C. Title 57 for the BOR's action in this case.

———————————

**LUNDBERG STRATTON, J., dissenting.**

{¶ 28} The majority admits that the failure to notify Candlewood of the valuation hearing deprived the BOR of jurisdiction to consider the complaint filed by the Cincinnati Board of Education. As a result, the majority finds that the decision of the BOR, increasing the value of Candlewood's property, is a nullity. The majority recognizes that the BOR has authority to reconsider its decisions. However, the majority then determines that the BOR had no authority to vacate this decision, even if void, because the appeal time had run. In support of its holding, the majority cites *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590, which held:

"Generally, administrative agencies have inherent authority to reconsider their own decisions since the power to decide in the first instance carries with it the power to reconsider. The agencies retain jurisdiction to set aside or otherwise reconsider their decisions until the actual institution of a court appeal or until expiration of the time for appeal * * *." *Id.* at paragraph three of the syllabus.

{¶ 29} I disagree with the majority's holding for the following reasons. In an August 18, 1997, decision, the BOR increased the value of Candlewood's property. Candlewood had no notice of the August 18, 1997 decision until March 1998. Shortly thereafter, Candlewood filed its motion to vacate, which ultimately persuaded the BOR to vacate its decision.

{¶ 30} The time period for appeal of an agency decision does not commence where the agency fails to notify the appellant of its decision. *Slone v. Ohio Bd. of Embalmers & Funeral Directors* (1995), 107 Ohio App.3d 628, 669 N.E.2d 288. Failure of notice of a decision justifies tolling the appeal time. See *State ex rel. Hughes v. Celeste* (1993), 67 Ohio St.3d 429, 619 N.E.2d 412.

{¶ 31} Since Candlewood never received notice of the August 18, 1997 decision of the BOR until March 1998, I believe that appeal time for that decision should have been tolled until at least March 1998, the date that Candlewood received notice of the decision. Thus, I believe that, even under *Hal Artz Lincoln-Mercury*, the BOR retained the authority to vacate its August 18, 1997 decision because the appeal time had not run, but rather had been tolled until the proceedings were revisited by the BOR pursuant to Candlewood's motion to vacate, which ultimately led the BOR to decide to vacate its decision. *Hal Artz Lincoln-Mercury*, paragraph six of the syllabus.

{¶ 32} Second, in addition to the tolling argument, I believe that the BOR had the authority to vacate its decision regardless of whether the appeal time had run or an appeal had been taken. Although I generally agree that *Hal Artz Lincoln-Mercury* dictates that expiration of the appeal time or the filing of a notice of appeal

terminates an agency's jurisdiction to reconsider its decision, I believe that it does not apply in this case. In *State ex rel. B & C Machine Co. v. Indus. Comm.* (1992), 65 Ohio St.3d 538, 605 N.E.2d 372, this court addressed a workers' compensation appeal. As a threshold matter, the court had to determine whether the filing of a notice of appeal with the court of common pleas divested the Industrial Commission of jurisdiction to reconsider its order. This court found that the issue appealed to the court of common pleas came within the exclusive jurisdiction of the Industrial Commission. Because the issue was not appealable, the court determined that the appeal was a nullity, and thus the notice of appeal did not divest the Industrial Commission of jurisdiction to reconsider its decision. *Id.* at 541, 605 N.E.2d at 375.

{¶ 33} As the majority recognizes, the decision of the BOR that increased the value of Candlewood's property is a "nullity and void" because Candlewood was never notified of the action or the hearing that led to it. Applying the rationale of *B & C Machine Co.*, I would find that, because the August 18, 1997 order of the BOR was a nullity, the commencement of an appeal or the running of the appeal time should not divest the BOR of jurisdiction to vacate the order. I believe that this reasoning comports with common sense because in reality there is no valid decision to appeal. After all, vacating a void decision is merely a recognition that the decision was always a nullity. *Van DeRyt v. Van DeRyt* (1966), 6 Ohio St.2d 31, 36, 35 O.O.2d 42, 45, 215 N.E.2d 698, 704.

{¶ 34} For all the aforementioned reasons, I would affirm the decision of the BOR to vacate its August 18, 1997 decision increasing the value of Candlewood's property. Therefore, I dissent.

_____