JOURNAL ENTRY and OPINION
Jeremy Cooper, natural father of Dominic Cooper, appeals from a judgment of the Cuyahoga Common Pleas Court, Juvenile Division, denying his motion for relief from judgment. On appeal, he assigns the following as error for our review:
 I. THE TRIAL COURT ABUSED ITS DISCRETION AND/OR COMMITTED PLAIN ERROR IN REFUSING TO ALLOW APPELLANT TO CALL AS A WITNESS UPON CROSS EXAMINATION HIS EX-WIFE, SUSAN BOIK, SAID INDIVIDUAL WHOSE TESTIMONY WAS MATERIAL TO ESTABLISH APPELLANT'S CASE.
 II. THE TRIAL COURT ERRED IN ADMITTING AND SUBSEQUENTLY RELYING UPON HEARSAY TESTIMONY AS TO WHETHER APPELLANT WAS EVADING SERVICE OF PROCESS IN THE WITHIN MATTER.
 III. THE TRIAL COURT ERRED IN DETERMINING THAT CUYAHOGA COUNTY EXERCISED DUE DILIGENCE IN ATTEMPTING TO ASCERTAIN THE WHEREABOUTS OF JEREMY COOPER AND, AS SUCH, WAS NOT ENTITLED TO PERFECT SERVICE BY PUBLICATION, THUS VOIDING THE COURT OF JURISDICTION OVER APPELLANT IN THE WITHIN MATTER.
 IV. THE TRIAL COURT ERRED BY ADMITTING AND RELYING UPON EVIDENCE WHICH WAS MORE PREJUDICIAL AS WELL AS PROHIBITIVE IN RENDERING ITS DECISION IN THE WITHIN MATTER AND FURTHER VIOLATED ITS OWN INSTRUCTIONS BY CONSIDERING EVIDENCE WHICH WAS [sic] EXPRESSLY INSTRUCTED THE PARTIES AS NOT RELEVANT IN THE WITHIN MATTER.
 V. THE TRIAL COURT ERRED IN ITS DETERMINATION THAT APPELLANT JEREMY COOPER WAS SERVED VIA PUBLICATION WHEN, IN FACT, SAID NOTICE OF PUBLICATION DID NOT COMPLY WITH STATUTE OR CASE LAW OF THE STATE OF OHIO.
Having reviewed the arguments of the parties and the pertinent law, we agree with Cooper that due diligence had not been exercised in locating him and, therefore, we reverse the order granting permanent custody and direct the trial court to conduct a new hearing after perfecting service upon all parties.
The issue in this case is whether Cooper, received notice of the complaint for permanent custody filed by Cuyahoga County Children and Family Services (CCDCFS). The record before us reveals Jeremy and Susan Cooper, n.k.a. Susan Boik, were married in 1995 and had one child, Dominic, during the marriage. They separated in March 1998, at which time Cooper moved out of the marital residence to 145 Shawnee Dr., Kent, Ohio. He resided there for approximately one month; he then moved to 34 Byers Ave., Akron, Ohio, and resided there through April 10, 2001.
Subsequent to the parties' separation, Boik filed a complaint for divorce in Portage County in March or April 1998. Cooper testified he notified Portage County Children and Family Services of his new address for child support billing purposes and provided them with his telephone and pager numbers. He further testified he notified the trial court in Portage County, in the presence of Susan Boik, of his new address. This testimony was corroborated by Angela Bozic, Cooper's fiancé.
In early 1999, Cooper retained an attorney to locate Boik in order to obtain a divorce and establish custody and/or visitation of Dominic. When she was found, Cooper filed a complaint for divorce in Summit County. At a hearing on January 16, 1999, a magistrate informed him a divorce had previously been granted in Cuyahoga County in Boik's favor and Boik had lost custody of Dominic. Cooper testified he was not served with a complaint for divorce nor was he served with the complaint for permanent custody filed by CCDCFS.
Dr. Roy Dennis, Cooper's step-father, testified Cooper lived with him at the Shawnee address from March 1998 until approximately the first week of May 1998. Cooper continued to receive mail at the Shawnee address and would pick it up at least once a week. Dr. Dennis then moved from that address and continued to receive Cooper's mail for a period of time. Dr. Dennis stated he was not aware of any papers from juvenile court coming to his address. Further, he testified Boik had visited his office and knew he communicated with Cooper.
The social worker assigned to Dominic's case, Lara Schwarz, testified her efforts to locate Cooper were based almost entirely upon information provided by Boik. In detailing her efforts, she stated she called the operator for information in Kent, Ravenna, Stow and Akron, but no listing existed for Cooper. She contacted Portage, Stark and Summit County Departments of Family and Children Services; she also contacted Stow and Kent police departments, the Ohio Department of Corrections web site and the public libraries in Kent and Ravenna. Schwarz also testified she telephoned every Cooper in the Cleveland phone book. Because she failed to locate Cooper, Schwarz attempted service by publication.
On cross-examination, Schwarz admitted she did not check on the Internet or in the Summit County courts. She also stated she was unaware that Cooper filed for a divorce in Summit County. Schwarz testified she learned Dr. Dennis lived at the Shawnee address and knew Cooper had been living with him but made no effort to contact Dr. Dennis to find out if he had any information concerning Cooper's whereabouts.
A hearing was held on September 12, 2000 in Cuyahoga County Juvenile Court on a motion to modify temporary custody to permanent custody filed by CCDCFS. Jeremy Cooper was not present at the hearing. Upon learning he had lost custody of Dominic in January 2001, he filed a motion for relief from judgment, which the court denied following a hearing. Because we believe the third assignment of error is dispositive in this case, we decline to entertain the remaining issues.
Cooper argues CCDCFS failed to exercise due diligence in attempting to locate him and as such, should not have been able to perfect service by publication. R.C. 2151.29 states service of a summons or a notice shall be made by delivering a copy to the person summoned or notified, or by leaving a copy at the residence. It further provides whenever it appears by affidavit that after reasonable effort the person to be served cannot be found or her post-office address ascertained, the clerk shall publish such summons once in a newspaper. When a period of one week has elapsed, the juvenile court shall have full jurisdiction.[1]
In Alborn v. Feeney[2], this court noted that "[i]n Sizemore v.Smith[3], where counsel contacted the Post Office and his client in an attempt to locate a defendant's address before using service by publication, the court held that such minimal efforts did not constitute reasonable diligence entitling a plaintiff to serve a defendant by publication. In that case, the court quoted from Black's Law Dictionary and stated the following:
 Black's Law Dictionary (5 Ed. 1979), at 412, defines "reasonable diligence" as "[a] fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity."[4]
 As indicated by the above definition, what constitutes reasonable diligence will depend on the facts and circumstances of each particular case. A careful examination of appellee's efforts demonstrates that they were perfunctory. * * *
* * *
 * * * Reasonable diligence requires taking steps which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address.
Furthermore, in Lincoln Tavern, Inc. v. Snader[5], the Court held: "It is axiomatic that for a court to acquire jurisdiction there must be a proper service of summons or an entry of appearance, and a judgment rendered without proper service or entry of appearance is a nullity and void.[6]"
Despite her claim that she used reasonable diligence to locate Cooper, the record demonstrates Schwarz failed to take the steps which a person of ordinary prudence would reasonably expect to be successful. Boik provided Schwarz with Cooper's father's address; she knew he lived on Harley Ave., Cleveland, Ohio. Schwarz failed to visit the home to investigate whether Mr. Cooper, Sr. knew where his son was residing. Further, Schwarz testified she knew Dr. Dennis had been living at the Shawnee address but did not contact him to find out if he had any information concerning Cooper's whereabouts because she stated she did not know how to find him. However, she did not attempt to find Dr. Dennis. The only information she relied upon was that provided by a former wife.
On the basis of the foregoing, we conclude CCDCFS did not obtain good service on Jeremy Cooper. And, without proper service, the trial court lacked jurisdiction to grant permanent custody of Dominic to CCDCFS, thereby terminating Cooper's parental rights. Although the issue before the court is framed as one involving the court's abuse of discretion in denying the Civ.R. 60(B) motion for relief from judgment, we recognize where a judgment is void ab initio, a trial court has the inherent authority to vacate such a judgment.[7] Accordingly, the juvenile court lacked jurisdiction to enter an award of permanent custody in this case because service had not been perfected over Jeremy Cooper. As a result, the order awarding permanent custody of Dominic to CCDCFS is hereby reversed. The trial court is directed to conduct a new hearing after all parties are properly served.
Judgment reversed.
This cause is reversed.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., and TERRENCE O'DONNELL, J. CONCUR.
[1] See also, Civ.R. 4.
[2] 2001 Ohio App. LEXIS 5058, (Nov. 15, 2001), Cuyahoga App. No. 79408, unreported.
[3] (1983), 6 Ohio St.3d 330, 453 N.E.2d 632.
[4] Id.
[5] (1956), 165 Ohio St. 61, 133 N.E.2d 606.
[6] See, also, Cincinnati Sch. Dist. Bd. Of Edu. v. Hamilton Cty. Bd.Of Revision (2000), 87 Ohio St.3d 363, 721 N.E.2d 40; a judgment rendered without personal jurisdiction over a defendant is void ab initio;CompuServe, Inc. v. Trionfo (1993), 91 Ohio App.3d 157,631 N.E.2d 1120.
[7] Alborn, supra; Cincinnati Sch. Dist. Bd. Of Edu. v. Hamilton Cty.Bd. Of Revision (2000), 87 Ohio St.3d 363, 721 N.E.2d 40.