[Cite as *Sightless Children Club v. Montgomery Cty. Bd. of Revision*, 2013-Ohio-3282.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

SIGHTLESS CHILDREN CLUB

     Plaintiff-Appellee

v.

MONTGOMERY COUNTY BOARD OF REVISION, ET AL.

     Defendants-Appellants

Appellate Case No.    25480

Trial Court Case No.   2011-CV-6749

(Civil Appeal from
 Common Pleas Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 26th day of July, 2013.

. . . . . . . . . . .

MATTHEW C. SORG, Atty. Reg. No. 0062971, 2700 Kettering Tower, Dayton, Ohio 45423
     Attorney for Plaintiff-Appellee

MATHIAS H. HECK, JR., by MAUREEN C. YUHAS, Atty. Reg. No. 0037361, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Defendants-Appellants

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendants-Appellants, Montgomery County Board of Revision and Montgomery County Auditor, appeal from a trial court judgment valuing the property of Plaintiff-Appellee, Sightless Children Club at zero dollars, based on SCC's charitable status.[1] The BOR and Auditor contend that the BOR lacked jurisdiction to hear a tax exemption complaint. They also contend that a tax exemption finding has no bearing on the true market value of a parcel of real estate. Finally, they contend that the statutory tax exemption process cannot be bypassed by valuing a real estate parcel at zero dollars.

**{¶ 2}** We conclude that the trial court erred in valuing the subject property at zero dollars. The issue before the court was the true valuation of the property, not whether SCC was entitled to a tax exemption based on its charitable status. SCC filed a complaint against valuation with the BOR, pursuant to R.C. 5715.19. Whether a tax exemption should be granted is a matter for the tax commissioner to decide, based on an application for an exemption under R.C. 5715.27. These are separate statutory procedures, and SCC did not file an application for a tax exemption. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

## I. Facts and Course of Proceedings

**{¶ 3}** SCC is a non-profit charitable organization that helps blind and visually impaired children with computer equipment, other kinds of equipment, and talking software. SCC was founded in 1952 and holds tax-exempt certification under Section 501(c)(3) of the Internal Revenue Code and its predecessor statutes.

---

[1] For purposes of convenience, we will refer to the parties, respectively, as BOR, Auditor, and SCC.

**{¶ 4}** In July 2010, SCC purchased property located at 950 Henke Road in Vandalia, Ohio, for $650,000. The property was purchased from Abbey Credit Union, and the purchase was not the result of a sheriff's sale or an active foreclosure. SCC initially offered $500,000 for the property. After a number of counter-offers were exchanged, SCC eventually agreed to pay $650,000.

**{¶ 5}** In January 2011, SCC filed a complaint with the BOR, seeking a decrease in taxable value for the tax year 2010. At the time, the appraised or "true" value of the property was $1,435,660, with the taxable value being $502,480. SCC alleged in the complaint that the appraised value of the property should be decreased to $650,000, and that the taxable value should be decreased to $227,500. The basis for the request was the purchase price paid for the property. In addition, the complaint noted that the property was principally used for SCC meetings and bingo.

**{¶ 6}** Subsequently, in May 2011, SCC filed an amended complaint, requesting that the taxable value of the property be decreased to zero. The justification for the change in value was that the property had been sold to SCC, a charitable organization recognized under Section 501(c)(3) of the Internal Revenue Code.

**{¶ 7}** According to the BOR commercial property record, printed on June 30, 2011, a liquidation/foreclosure occurred in August 2009, at a price of $150,000. Abbey Credit Union Inc. subsequently sold the property to SCC about a year later, for $650,000.

**{¶ 8}** The BOR held a hearing in July 2011, and heard testimony from Lisa Buckingham, SCC's president. Buckingham explained the facts pertaining to SCC's designation as a charitable organization, and described the negotiations between SCC and Abbey Credit

Union for the sale of the property. In August 2011, the BOR issued a decision concluding that the true value of the property should not be changed from $1,435,660. SCC then appealed the decision of the BOR to the Montgomery County Common Pleas Court.

{¶ 9} After the transcript of the administrative proceedings was filed, the parties filed briefs. The trial court then reversed the decision of the BOR. The trial court held that SCC had presented prima facie evidence of an arm's length transaction between itself and Abbey Credit Union. The court further concluded that SCC qualified as a charitable institution under R.C. 5709.121, and that it had used the property exclusively for charitable purposes during the 2010 tax year. Accordingly, the trial court valued the property for tax purposes as zero dollars.

{¶ 10} The BOR and Auditor appeal from the judgment of the trial court.

I. Did the Trial Court Err in Valuing the Property at Zero Dollars?

{¶ 11} The BOR's and Auditor's sole assignment of error is as follows:

The Trial Court Erred in Valuing the Subject Property at Zero and 00/100 ($0.00) dollars.

{¶ 12} Under this assignment of error, the BOR and Auditor present three issues, which we will separately address. The first issue is whether the BOR has jurisdiction to hear tax exemption complaints. The trial court considered this point, but concluded that the BOR had mis-characterized the issue. In this regard, the court observed that SCC's complaint for valuation did not operate as an application for an exemption. Instead, the court viewed the issue as whether the BOR's valuation was reasonable, given SCC's previously documented tax-exempt status and charitable use of the property.

{¶ 13}   In the case before us, two separate statutory procedures could have been followed.   The first procedure relates to valuation of property.   R.C. 5715.19(A)(1)(d) permits property owners to file complaints with the county auditor against "[t]he determination of the total valuation or assessment of any parcel that appears on the tax list * * *."   After a complaint against valuation is filed, the county auditor presents it to the board of revision.   R.C. 5715.19(A)(1).   After the board of revision makes a decision, R.C. 5717.05 allows further appeal to the common pleas court.[2]

{¶ 14}   The scope of review of such an appeal has been outlined as follows:

R.C. 5717.05 does not require a trial de novo by courts of common pleas on appeals from decisions of county boards of revision.   The court may hear the appeal on the record and evidence thus submitted, or, in its discretion, may consider additional evidence.   The court shall independently determine the taxable value of the property whose valuation or assessment for taxation is complained of, or, in the event of discriminatory valuation, shall determine a valuation that corrects such discrimination.   The judgment of the trial court shall not be disturbed absent a showing of abuse of discretion.   *Black v. Bd. of Revision of Cuyahoga Cty.*, 16 Ohio St.3d 11, 475 N.E.2d 1264 (1985), paragraph one of the syllabus.

{¶ 15}   SCC utilized the above procedure, by filing its complaint and amended complaint against valuation with the BOR.   After an adverse decision by the BOR, SCC then

---

[2]   This method of appeal is described as an alternative to the appeal allowed by R.C. 5717.01, which permits parties to appeal decisions of the board of revision to the board of tax appeals.   SCC chose the alternate route of appealing directly to the common pleas court.

appealed to the common pleas court.

**{¶ 16}** The second procedure that could have been used pertains to applying for tax exemptions for a property. In contrast to the procedure for challenging valuation, R.C.5715.27(A)(1) permits owners of any property to "file an application with the tax commissioner, on forms prescribed by the commissioner, requesting that such property be exempted from taxation and that taxes, interest, and penalties be remitted as provided in division (C) of section 5713.08 of the Revised Code."

**{¶ 17}** After the tax commissioner makes a decision on whether the property is exempt, the commissioner certifies the decision to the auditor, who is required to correct the tax list. R.C. 5715.27(F). Decisions of the tax commissioner may be appealed to the Board of Tax Appeals (BTA), and can be further appealed to the Supreme Court of Ohio or to the court of appeals for the county where the taxed property is situated or in which the taxpayer resides. See R.C. 5703.02(A)(4) and R.C. 5717.04.

**{¶ 18}** "[T]he standard of review for a matter appealed from the BTA is whether the decision 'is reasonable and lawful.' " *Girl Scouts-Great Trail Council v. Levin*, 113 Ohio St.3d 24, 2007-Ohio-972, 862 N.E.2d 493, ¶ 9, quoting *Howard v. Cuyahoga Cty. Bd. of Revision*, 37 Ohio St.3d 195, 197, 524 N.E.2d 887 (1988). Furthermore, "[t]he BTA is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations," the BTA will be affirmed. (Citation omitted.) *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 152, 648 N.E.2d 483 (1995).

**{¶ 19}** The procedures outlined in the two statutory schemes are not the same, and different standards of review also apply. In addition, the Supreme Court of Ohio has

distinguished between a decision on whether property is exempt from taxation as opposed to the property's valuation or assessment for tax purposes. See *State ex rel. Lorain v. Stewart,* 119 Ohio St.3d 222, 2008-Ohio-4062, 893 N.E.2d 184.

**{¶ 20}** In *State ex rel. Lorain*, the relators asked the Supreme Court of Ohio to issue a writ of mandamus compelling a county auditor "to place on the tax-exempt property list certain properties certified by a city housing officer as having been granted community-reinvestment-area tax exemptions." *Id*. at ¶ 1. In opposing the writ, the auditor argued, among other things, that mandamus was unwarranted due to the existence of an administrative appeal, including an appeal under R.C. 5715.19. *Id*. at ¶ 54-59.

**{¶ 21}** The Supreme Court of Ohio rejected the auditor's argument that R.C. 5715.19 precluded the mandamus action. In this regard, the court noted that:

Under R.C. 5715.19(A)(1)(d), a complaint may be filed with the county board of revision contesting the "determination of the total valuation or assessment of any parcel that appears on the tax list." A county auditor determines "the true value of each separate tract, lot, or parcel of real property and of buildings, structures, and improvements located thereon * * * in every district, according to the rules prescribed by this chapter and section 5715.01 of the Revised Code, and in accordance with the uniform rules and methods of valuing and assessing real property as adopted, prescribed, and promulgated by the tax commissioner." R.C. 5713.03. Under R.C. 5713.01(B), the auditor "shall assess all the real estate situated in the county at its taxable value in accordance with sections 5713.03, 5713.31, and 5715.01 of the Revised Code and with the rules

and methods applicable to the auditor's county adopted, prescribed, and promulgated by the tax commissioner."

These provisions show that the auditor's decision that the properties are not exempt and should not be placed on the exempt list – notwithstanding his clear ministerial duty to place them on the list under R.C. 5713.07 and 5713.08 – *was a determination of whether the properties were exempt, not of their valuation or assessment for tax purposes*. The cases cited by the auditor to support his argument that relators had an appeal to the county board of revision do not address CRA exemptions and are thus distinguishable. See *State ex rel. Rolling Hills Local School Dist. Bd. of Edn. v. Brown* (1992), 63 Ohio St.3d 520, 589 N.E.2d 1265 (claim that property was erroneously recorded in improper taxing district could be reviewed in an appeal under R.C. 5715.19); *IBM Corp. v. Franklin Cty. Bd. of Revision*, Franklin App. No. 06AP–108, 2006-Ohio-6258, 2006 WL 3438656 (appeals challenging valuations based on tax abatement under an enterprise-zone agreement). (Emphasis added.) *Id.* at ¶ 57-58.

{¶ 22} In view of the separate statutory schemes for tax exemptions and for challenges to valuation, we agree with the BOR and Auditor that the trial court erred in basing its decision on SCC's qualification as a charitable organization. The valuation of the property is a separate issue from whether SCC is or was entitled to be exempt from taxes that would otherwise have been due. The trial court could have considered tax-exemption based on SCC's charitable status, if SCC had filed an application for a tax exemption with the tax commissioner, and had then appealed to the common pleas court. However, this is not the avenue SCC chose to pursue.

{¶ 23}   The BOR's and Auditor's second contention is that a tax exemption finding is separate from, and has no bearing upon, the true market value of real estate.   We agree with the BOR and Auditor.

{¶ 24}   "A board of revision is a creature of statute and is limited to the powers conferred upon it by statute."   (Citations omitted.)   *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision,* 87 Ohio St.3d 363, 368, 721 N.E.2d 40 (2000), *outcome modified on other grounds* as noted in *MB West Chester, L.L.C. v. Butler County Bd. of Revision,* 126 Ohio St.3d 430, 2010-Ohio-3781, 934 N.E.2d 928, ¶ 25. "The authority granted to a board of revision by R.C. 5715.01 is to 'hear complaints and revise assessments of real property for taxation.' "   *Cincinnati School Dist.* at 368.

{¶ 25}   R.C. 5715.11 also discusses boards of revision, and provides that:

> The county board of revision shall hear complaints relating to the valuation or assessment of real property as the same appears upon the tax duplicate of the then current year. The board shall investigate all such complaints and may increase or decrease any such valuation or correct any assessment complained of, or it may order a reassessment by the original assessing officer.

{¶ 26}   Based on the board of revision's ability to correct assessments, the Supreme Court of Ohio has held that "a school board may appeal the incorrect recording of a property on the tax list since the recording is a part of the assessment, and the board of revision has the power to correct this."   *State ex rel. Rolling Hills,* 63 Ohio St.3d at 521, 589 N.E.2d 1265.   Thus, in *Rolling Hills*, the Supreme Court of Ohio refused to issue a writ of mandamus against the county auditor, because the school board had the ability, under R.C. 5715.19(A) and R.C. 5715.11, to

ask the board of revision to correct the auditor's improper placement of taxable property within a different school district. *Id.* at 521-522.

{¶ 27} While this ability to hear challenges to assessments might be read broadly, *State ex rel. Rolling Hills* was one of the cases distinguished when the Supreme Court of Ohio stressed the distinction between valuation and tax exemptions. *State ex rel. Lorain*, 119 Ohio St.3d 222, 2008-Ohio-4062, 893 N.E.2d 184, at ¶ 58. Immediately after stressing this distinction, the Supreme Court of Ohio distinguished *State ex rel Rolling Hills* and another case, because they did not deal with the issue of tax exemptions. *Id.*

{¶ 28} Furthermore, research does not disclose cases giving a broad reading to the powers of the board of revision under R.C. 5715.01 and 5715.11. Instead, the board, "being a creature of statute," has only "specified powers to act on complaints." *Kalmbach Wagner Swine Research Farm v. Bd. of Revision of Wyandot Cty.*, 81 Ohio St.3d 319, 322, 691 N.E.2d 270 (1998). There is also a distinction between "correcting" an assessment, which implies a mistake, and granting a tax exemption. In the latter situation, no mistake has been made; the party is asking for relief from a tax assessment, due to the party's status. Thus, while the board of revision may have the ability to correct a mistake of the auditor regarding a property listing, there is no basis upon which to conclude that the board can make decisions on tax exemptions.

{¶ 29} As we have stressed, a separate statutory procedure exists for requesting tax exemptions. In this regard, the trial court's decision incorrectly relies on statutes and cases pertaining to requests for tax exemptions, not to valuation of property. For example, the trial court focused on R.C. 5709.12(B) and 5709.121, in determining that SCC's charitable status warranted a zero valuation of its property. Trial Court Decision Reversing the Board of

Revision, Doc. #23, pp. 6-7.

{¶ 30}   R.C. 5709.12(B) provides that "[r]eal and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation * * *."   Similarly, R.C. 5709.121(A) states that "[r]eal property and tangible personal property belonging to a charitable or educational institution * * * shall be considered as used exclusively for charitable or public purposes by such institution * * * " if the property meets one of the requirements listed under the statute.   One of these requirements, as pertinent to the trial court's decision, is that the institution uses the property for "charitable, educational, or public purposes."  R.C. 5709.121(A)(1)(b).

{¶ 31}   While these statutes define ways to establish or evaluate an owner's charitable status, the method through which property owners actually receive charitable tax exemptions is by filing applications for tax exemption with the tax commissioner, pursuant to R.C.5715.27(A)(1).   This is the procedure used in the cases relied on by the trial court.   *See* Trial Court Decision Reversing the Board of Revision, Doc. #23, p. 7.

{¶ 32}   For example, in *Northeast Ohio Psych. Inst. v. Levin,* 121 Ohio St.3d 292, 2009-Ohio-583, 903 N.E.2d 1188, the property owner had been denied a tax exemption for charitable activities by the tax commissioner and the BTA before appealing to the Supreme Court of Ohio.  *Id.* at ¶ 2.   Likewise, *Episcopal Parish of Christ Church, Glendale v. Kinney*, 58 Ohio St.2d 199, 389 N.E.2d 847 (1979), involved a denial of a tax exemption by the commissioner of tax equalization and the BTA, followed by an appeal to the Supreme Court of Ohio.   *Id*. at 200.   Accordingly, the cases that the trial court used to justify its decision do not, in fact, support the court's conclusions.

**{¶ 33}**   The BOR and Auditor further rely on Ohio Adm. Code 5703-25-10, which provides for classification and coding of parcels of land with respect to their major uses and their status as being exempt from taxation.   As the BOR and Auditor note, this section specifically states that:

> Nothing contained in this rule however, shall cause the valuation of any parcel of real property to be other than its true value in money or be construed as an authorization for any parcel of real property in any class in any county to be valued for tax purposes at any other value than its "taxable value" as set out in rule 5703-25-05 of the Administrative Code.   Ohio Adm. Code 5703-25-10(E).

**{¶ 34}**   Regarding taxable value, Ohio Adm. Code 5703-25-05 provides as follows:

> (A) "True value in money" or "true value" means one of the following:

> (1) The fair market value or current market value of property and is the price at which property should change hands on the open market between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having a knowledge of all the relevant facts.

> (2) The price at which property did change hands under the conditions described in section 5713.03 of the Revised Code, within a reasonable length of time either before or after the tax lien date, unless subsequent to the sale the property loses value due to some casualty or an improvement is added to the property.

> (B) In compliance with the provisions of sections 5713.01, 5713.03, 5715.01 and 5715.24 of the Revised Code, the "taxable value" of each parcel of

real property and the improvements thereon shall be thirty-five per cent of the "true value in money" of said parcel as of tax lien date in the year in which the county's sexennial reappraisal is or was to be effective beginning with the tax year 1978 and thereafter or in the third calendar year following the year in which a sexennial reappraisal is completed beginning with the tax year 1978.

{¶ 35}    Upon proper application to the tax commissioner, SCC may well be entitled to a tax exemption based on its charitable designation and purposes.   However, that issue was not properly before the trial court.

{¶ 36}    The BOR's and Auditor's final contention is that the statutorily created tax exemption process should not be bypassed by valuing a real estate parcel at zero dollars.   For the reasons previously discussed, we agree.   Accordingly, the BOR's and Auditor's sole assignment of error is sustained.

{¶ 37}    In responding to the arguments of the BOR and Auditor, SCC has suggested that if we remand the case to the trial court for consideration of valuation unrelated to the exemption, we should also consider finding that the appropriate property valuation is the $650,000 purchase price.

{¶ 38}    In its decision, the trial court concluded that SCC had established prima facie evidence of an arms-length transaction between SCC and Abbey Credit Union in July 2010. However, the court did not premise its decision on that finding, but instead reduced the property value to zero, based on the fact that SCC qualified as a charitable institution under R.C. 5709.121, and that SCC's use of the property during 2010 was exclusively charitable.   Because the valuation must be definitively decided by the trial court, the proper course is to remand the

case for further findings.

{¶ 39}    Based on the preceding discussion, the sole assignment of error is sustained.

### III.   Conclusion

{¶ 40}    The sole assignment of error of the BOA and Auditor having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

. . . . . . . . . . . . .

DONOVAN and FROELICH, JJ., concur.

Copies mailed to:

Mathias H. Heck
Maureen C. Yuhas
Matthew C. Sorg
Hon. Dennis J. Langer