[Cite as *Trudell v. Trudell*, 2012-Ohio-5023.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

LISA J. TRUDELL,
NKA, LISA J. RETTIG,

    PLAINTIFF-APPELLEE,

  v.

JAMES J. TRUDELL,

    DEFENDANT-APPELLANT.

CASE NO. 5-11-47

O P I N I O N

Appeal from Hancock County Common Pleas Court
Domestic Relations Division
Trial Court No. 2005-DR-351

**Judgment Affirmed**

Date of Decision:  October 29, 2012

APPEARANCES:

    *William E. Clark* for Appellant

    *Bret A Spaeth* for Appellee

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, James J. Trudell ("Father"), appeals the judgment of the Hancock County Court of Common Pleas, Domestic Relations Division, denying his motion to reallocate parental rights and responsibilities, and finding that Lisa J. Trudell, nka Lisa J. Rettig ("Mother"), should remain the primary residential parent. On appeal, the Father contends that the trial court abused its discretion when it found that he failed to meet his burden of proving that the proposed change would be in the children's best interests and that the advantage caused by the change would outweigh the harm. For the reasons set forth below, the judgment is affirmed.

{¶2} The parties were married in 1994, and two children were born as issue of the marriage: CJ in early 2000 and Rachel in late 2001. They were divorced on December 18, 2006, when the children were approximately 5 and 7 years old. The parties had agreed upon a Shared Parenting Plan which deemed each parent would be the "residential parent" when the children were in their possession, and the plan further outlined the time of "possession" during the school year, for vacations, holidays, etc. During the school year, the children were to attend school in the school district of the Mother's residence and the Father would have parenting time on alternating weekends, from Friday afternoon to Sunday afternoon. During the summer school recess, the Father's alternating weekend time was longer, from Thursday afternoons to Monday afternoons. The Shared Parenting Plan also

provided that "the residence of the children shall be in either Franklin, Hancock, Lucas, or Wood counties and that the children will not be moved out of any of those four (4) counties except by permission of the parent or the Court." (Dec. 18, 2006 J.E.)

{¶3} At the time of the divorce, the children primarily resided with the Mother in Columbus, Ohio, in Franklin County, where they had lived since the spring of 2006. Two years later, in the spring of 2008, the Mother married James Rettig ("Rettig" or "Step-Father"), and they moved to a new residence about a mile away.

{¶4} On May 15, 2009, the Mother filed a notice of intent to relocate herself and the children to Tampa, Florida, when Rettig had an opportunity to take over his father's financial management business, providing a substantial increase in the family income. (Aug. 17, 2010 Amended J.E.) The Father did not consent to the relocation, and the parties were unable to resolve the issue in mediation. On September 15, 2009, the Mother filed for reallocation of parental rights and responsibilities, requesting that she be named the residential parent; that the children be permitted to move with her to Florida; and, that the Father be granted companionship rights under Appendix K of the Hancock County Local Rules. The Father also filed a motion, requesting the court to terminate the Shared Parenting Plan and designate himself as the residential parent. Hearings were held in July 2010. On August 17, 2010, the trial court granted the Mother's motion,

designating her as the residential parent and allowing the children to move to Tampa, Florida. (*Id.*)

{¶5} In June of 2011, the Mother informed the Father that she, Rettig, and the children were moving from their leased residence in North Tampa to another residence in South Tampa, about 26 miles away. They were moving because there was uncertainty as to whether the property owners had been paying the mortgage and they were concerned that the home might be foreclosed upon. The move was within the same county and the same Hillsborough County School District, but Rachael would have to attend a different elementary school. CJ was going to be changing schools anyway because he was going into junior high, so he would now attend a junior high in the new neighborhood.

{¶6} On July 15, 2011, the Father filed another motion to reallocate custody because he was concerned that the children were again "being uprooted from their residence and school." (Jul. 15, 2011 Motion, p. 2) The Father asserted that the children have substantial ties in Ohio with him, with extended family members, and many friends in the Toledo area. After spending summer visitation with him, the Father represents that the children expressed that they did not wish to return to Florida. The Father contends that the circumstances which caused the court to originally allow the children to move to Florida have now changed. The trial court had found that "the strength of the Florida-based school system the children would attend and the overall receptiveness of the neighborhood in which they would

4

live" were reasons to permit the children to move to Florida. (Aug. 17, 2010 J.E., p. 13) Rachael was diagnosed with ADHD and required special attention, and now she will no longer be attending the same school. The Father also claimed that the Mother "travels extensively" for her job and often spends time away from the children. (Jul. 15, 2011 Motion, p. 2)

{¶7} The Mother's response and her testimony at trial asserted that the children did very well academically in the new Florida school system and that their new schools were still within the same system and were also highly rated. The Mother testified that the children were engaged in extra-curricular activities and had made many friends in Florida. She only traveled overnight for her job about eight nights in a year.

{¶8} The trial court appointed the same Guardian Ad Litem ("GAL") that had previously worked with the family. The court also held an in camera interview with the children on August 17, 2011, and reviewed the transcript from the July 2010 in camera interview.

{¶9} A hearing was held on October 5, 2011, and the trial court heard testimony from: the Mother and Rettig; the Father and his fiancé; the Father's mother and sister; the children's former guidance counselor; and Rachael's optometrist and her vision therapist.[1] After considering all of the evidence, the trial court found that there was a change of circumstances as to Rachael that was

---

[1] Rachael had some vision problems which impacted her reading ability.

sufficient to meet the threshold level necessary before a modification of custody may be considered. See R.C. 39109.04(E)(1)(a). The trial court found that the move would have a relatively minor impact on CJ, as he would have had to change schools regardless. However, the trial court found that the move represented a "substantial change" for Rachael, requiring her to once again change schools.[2] (Nov. 29, 2011 J.E., p. 9)

{¶10} Having found that the first prong of the statutory requirement was met, the trial court then reviewed the facts to determine whether modification of parental rights would be in the best interests of the children and whether one of the three factors in R.C. 3109.04(E)(1)(a) was applicable. After doing a detailed analysis of all the facts and statutory factors, the trial court found that "the advantages likely to be caused by a change in environment do not outweigh the harm likely to be caused by such a change in environment, as set forth in R.C. 3109.04(E)(1)(a)(iii). As such [the Father] has failed to meet his burden of proving the proposed change as to the allocation of parental rights and responsibilities is in the children's best interest." (Nov. 29, 2011 J.E., p. 13) On November 29, 2011, the trial court denied the Father's motion to reallocate parental rights and held that the previous judgment entry of the court was to remain in effect.

[2] The trial court found that Rachael's academic performance improved significantly during her time at Pride Elementary in Florida (as compared to her previous Ohio school), despite her having some trouble initially adjusting to the new setting. It also stated that there was no testimony that Rachel was having any problems at her new school since the move, but noted that a child did not have to suffer any adverse consequences in order for a court to find a change of circumstances has occurred. (Nov. 29, 2011 J.E., p. 9, citing *LaBute v. LaBute*, 179 Ohio App.3d 696, 2008-Ohio-6190, ¶ 8 (3d.Dist).

{¶11} It is from this judgment that the Father timely appeals, raising the following two assignments of error for our review.

**First Assignment of Error**

**The trial court erred and abused its discretion when it ignored probative evidence and held that [Father] failed to meet his burden of proof.**

**Second Assignment of Error**

**The trial court erred and abused its discretion when it held that [Father] failed to prove by a preponderance of the evidence that the advantage likely to be caused by naming him residential parent outweighs the harm likely to be caused by such a change in environment.**

{¶12} In addition to her reply to the above assignments of error, the Mother has also raised a cross assignment of error, pursuant to R.C. 2505.22:

**Cross Assignment of Error**

**The trial court erred and abused its discretion in finding there to be a change in circumstances.**

*Law and Standard of Review*

{¶13} The modification of parental rights and responsibilities is controlled by R.C. 3109.04(E). This statute creates a rebuttable presumption in favor of retaining the residential parent. R.C. 3109.04(E)(1)(a); *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604 (7th Dist.2000). Therefore, a court shall not modify a parenting decree allocating parental rights unless it finds that, based on facts that have arisen since the decree, there has been a change in circumstances of the child or the child's residential parent and modification of the decree is necessary to

serve the child's best interest. R.C. 3109.04(E)(1)(a). Additionally, the court must find that one of the factors listed in R.C. 3109.04(E)(1)(a)(i), (ii), and (iii) applies. R.C. 3109.04(F) provides a non-exclusive list of relevant factors to be utilized in helping to determining what would be in a child's best interest.

{¶14} Custody issues are some of the most difficult decisions a trial judge must make. Therefore, those decisions rest within the sound discretion of the trial court. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260; *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). A court's decision regarding an award of custody is subject to reversal only upon a showing of an abuse of that discretion. *Id.*; *Trickey v. Trickey*, 158 Ohio St. 9, 13–14 (1952). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *Bruce v. Bruce*, 3d Dist. No. 9–10–57, 2012–Ohio–45, ¶ 13, citing *State v. Boles*, 187 Ohio App.3d 345, 2010–Ohio–278, ¶ 17–18 (2d Dist.), citing Black's Law Dictionary (8 Ed.Rev.2004) 11. "A reviewing court will not overturn a custody determination unless the trial court has acted in a manner that is arbitrary, unreasonable, or capricious." *Pater v. Pater*, 63 Ohio St.3d 393 (1992).

{¶15} The reason for this standard of review is that the trial judge is in the best position to view the demeanor, attitude, and credibility of each witness and to weigh the evidence and testimony. *Davis*, 77 Ohio St.3d at 418. This is especially

true in a child custody case, since there may be much that is evident in the parties'

demeanor and attitude that does not translate well to the record. *Id.* at 419.

> [I]t is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. * * *

(Citations omitted.) *Miller*, 37 Ohio St.3d at 74.

**{¶16}** In applying an abuse of discretion standard, a reviewing court is not

free to substitute its judgment for that of the trial court. *Hay v. Shafer*, 3d Dist. No.

10–10–10, 2010–Ohio-4811, ¶ 14, citing *Holcomb v. Holcomb*, 44 Ohio St.3d 128,

(1989). When reviewing a change of child custody proceedings, an appellate court

should be guided by the presumption that trial court's findings were correct.

*Miller* at 74.

*Father's Assignments of Error*

**{¶17}** In both of his assignments of error, the Father contends that the trial

court abused its discretion when it failed to find that the evidence supported his

motion for a change in parental rights and responsibilities. In the first assignment

of error, the Father claims that the trial court improperly considered certain facts,

and that it ignored evidence that it would be in the children's best interest to live

with him in Toledo. In the second assignment of error, the Father asserts that the

trial court's decision was against the manifest weight of the evidence because it

failed to place appropriate weight on the factors that would show the benefit in moving to Toledo would outweigh the harm caused by a change in environment and custody.

{¶18} Our review of the record shows that both parents had concerns about the other parent's ability to provide the kind of parenting and environment that he or she felt would be best for the children. For example, the Mother was concerned that the Father would enroll CJ in a Catholic school, in contravention of their agreement that he would be raised in the Protestant religion. The Mother also believed that the Father was too lenient with the children and that he was not diligent in insisting that school work was properly completed. The Father had concerns that the children were moving too often, that the Mother sometimes traveled overnight for business, and that the children were having issues in adjusting to living with their new stepfather. However, none of the issues that either parent raised indicated that the children's health, safety, and well-being were not being appropriately taken care of by both of the parents. (Tr. pp. 17, 30 – counselor affirming that there was no evidence of abuse or any reason to contact children's services)

{¶19} This case was replete with positive evidence that *both* parents love the children very much, want to provide the best care and upbringing possible, and that either parent would be a competent, capable, and caring residential parent. The evidence showed numerous benefits that the children would have with each

parent. There would be some advantages and some disadvantages for the children, regardless of which parent was designated the residential parent. The trial court found that the evidence was not sufficient to overcome the presumption in favor of retaining the current residential parent. *See Rohrbaugh*, 136 Ohio App.3d at 604.

{¶20} The record demonstrates that the trial court carefully considered all of the relevant evidence and applicable statutory factors and took the responsibility of its decision very seriously. The trial court spent a considerable amount of time talking to the children during two in camera interviews in 2010 and 2011. It analyzed all of the evidence and factors in a detailed fourteen-page decision. "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), at the syllabus.

{¶21} The trial court has been involved with these parties, and in making decisions concerning the best interests of these children since 2005. The trial court was in a superior position to evaluate the weight of the evidence and judge the credibility, demeanor and motivation of the various witnesses. *See Malone v. Malone*, 3d Dist. No. 13-10-39, 2011-Ohio-2096, ¶ 14. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record. *Id.*; *Davis*, 77 Ohio St.3d at 419. It is not our position to weigh the evidence or substitute our

11

judgment for that of the trial court. *See Miller*, 37 Ohio St.3d at 74; *Daniels v. Daniels*, 3d Dist. No. 11-08-10, 2009-Ohio-784, ¶ 14.

**{¶22}** Based on the above, we find that there was ample competent and credible evidence in the record to support the trial court's decision. We find no abuse of discretion in denying the Father's motion to modify parental rights and responsibilities. The Father's first and second assignments of error are overruled.

*Mother's Cross-Assignment of Error*

**{¶23}** In her cross assignment of error, the Mother contends that the trial court erred when it found that a "change of circumstances" of a child or the residential parent had occurred since the prior order went into effect on November 16, 2010. See R.C. 3109.04. The Mother asserts that the Father failed to meet his burden of proving this threshold requirement by a preponderance of the evidence, and therefore, the trial court erred in even considering a change in parental rights within less than a year of its previous order.

**{¶24}** Based upon our disposition of the Father's assignments of error, resulting in an affirmance of the trial court's decision, this defensive assignment of error is moot and need not be considered. *See Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, ¶¶ 31-32; *Parton v. Weilnau*, 169 Ohio St. 145, 158 N.E.2d 719, (1959) paragraph seven of the syllabus (We may consider an appellee's cross-assignment of error "only when necessary to prevent a reversal of the judgment under review.")

{¶25} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. concurs.**

**ROGERS J., Concurring separately.**

{¶26} I concur with the result reached by the majority, but for different reasons. I would sustain Father's assignments of error because the trial court analyzed the issues in an improper manner. The consequence of sustaining Father's assignments would be reversal of the trial court's judgment. However, because I would sustain the cross-assignment of error, which argues that the trial court erred in finding that there was a change of circumstances, I concur in affirming the judgment.

{¶27} Procedurally, it is necessary to consider Father's assignments of error first, as the cross-assignment need only be considered for the purpose of preventing a reversal of the appealed judgment. *See* App.R. 3(C)(2).

R.C. 3109.04 reads, in pertinent part, as follows:

(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree * * * that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the

13

prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶28} The last sentence of (E)(1)(a) requires that "the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies" and then lists three additional (and alternative) criteria. Therefore, if the trial court finds a change of circumstances, it must next consider the best interests of the child. If the best interest requirement is met, then, and only then, will the trial court need to consider whether the "harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

This court has previously stated:

When deciding whether a modification of custody is appropriate, the court *must* determine three things. (1) Has there been a change in circumstances? (2) Is this modification in the best interest of the child? (3) Will the harm that will result from the change be outweighed by the benefits that will result from the change? (Emphasis added.) *Clark v. Smith*, 130 Ohio App.3d 648, 653 (3d Dist. 1998).

14

**{¶29}** In this case, after finding that a change of circumstances existed, the trial court found that "the advantages likely to be caused by such a change in environment do not outweigh the harm likely to be caused by such a change * * *. As such [the father] has failed to meet his burden of proving the proposed change * * * is in the children's best interest." Nov. 29, 2011 Judgment Entry, p. 13. Apparently the trial court reasoned that a failure to meet a test of harm versus advantages defeats the best interest issue, when logically the trial court was required to first determine best interests before getting to the harm versus advantages issue. *See Eatherton v. Behringer*, 3d Dist. No. 13-11-12, 2012-Ohio-1584, ¶ 14, citing *Loudermilk v. Lynch*, 11th Dist. Nos. 2002-A-0044, 2002-A-0045, 2004-Ohio-5299, ¶ 19 (the trial court must consider each of the three steps in R.C. 3109.04(E)(1)(a) in the order listed).

**{¶30}** Therefore, the trial court improperly applied the statute in this case.

**{¶31}** Furthermore, it is logical that once the movant has demonstrated a change of circumstances, and satisfied the trial court as to best interests of the child, then the burden of going forward would shift to the current residential parent to demonstrate that the harm caused by the change would outweigh the advantages of the change of environment to the child.[3] Because the statute reads "harm likely to be caused * * * is outweighed by the advantages * * * to the child" it would seem illogical to require the movant to prove the harm, and one would

---

[3] The reference here is limited to the consideration required by R.C. 3109.04(E)(1)(a)(iii) because (a)(i) and (a)(ii) are inapplicable to this case.

think that having proven best interests, the advantages are already in evidence, although further evidence on the issue should not be excluded. Here, the trial court improperly placed the burden on the movant/Father.

{¶32} Therefore, I would sustain Father's assignments of error, which then opens the door to consideration of Mother's cross-assignment of error pursuant to App.R. 3(C)(2).

The Ohio Supreme Court has stated:

The clear intent of that statute is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a 'better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997), quoting *Wyss v. Wyss*, 3 Ohio App. 3d 412, 416 (10th Dist. 1982).

{¶33} Further, the Supreme Court has stated that: "[c]learly, there must be a *change* of circumstances to warrant a change of custody, and the change must be a change of substance, not a slight or inconsequential change." (Emphasis sic.) *Flickinger* at 418.

{¶34} The facts of this case do not warrant a finding of a change of substance. The trial court's minuscule statement as to a change of circumstances was limited to Rachel's "once again" having to change schools. Apparently the trial court was concerned that moving 26 miles within the same city and remaining in the same school district was more traumatic to Rachel than moving from Ohio

16

to Florida and away from her friends and father had been one year earlier. This conclusion of a change of circumstances comes in the same breath where the trial court finds no change affecting C.J. The logic escapes me.

{¶35} It is also remarkable that the trial court made reference to the fact that if Father was named the residential parent he might enroll the children in a Catholic school contrary to the original shared parenting order which provided "that the children be raised in the Protestant/Reformation church." Nov. 29, 2011 Judgment Entry, p. 7. However, that same shared parenting order also provided that the children continue to reside in the state of Ohio, but just one year earlier that proviso was of no consequence to the trial court. If there was some logic behind the trial court's reference to the shared parenting order in this case when it is no longer in effect, but to ignoring it in the prior hearing a year earlier when it was still in effect, I have failed to find it in the trial court's decision.

{¶36} Although I disagree with the majority's disposition of Father's assignments of error, I would sustain Mother's cross-assignment of error and affirm the judgment of the trial court.

**/hlo**

17