[Cite as *In re L.B.*, 2018-Ohio-1957.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

In re L.B.

Court of Appeals No.  S-17-028

Trial Court No.  21130108

**DECISION AND JUDGMENT**

Decided:  May 18, 2018

* * * * *

Amanda A. Andrews, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1}  This is an appeal from the judgment of the Sandusky County Court of

Common Pleas, Juvenile Division, which denied appellant-mother's, T.B., motion to

change custody of her minor child, L.B.  For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} This case began with a complaint in dependency and neglect filed by the Sandusky County Department of Job and Family Services ("the agency"). The complaint alleged that in the spring of 2011, appellant tried to commit suicide on a couple of occasions as she and appellee-father, B.B., were going through a divorce. In addition, the complaint alleged an occasion where appellee was drunk and became aggressive and violent. Appellee was arrested for domestic violence as a result of the incident, but ultimately was not convicted.

{¶ 3} The parties consented to a finding of dependency. On October 3, 2011, following a dispositional hearing, the trial court awarded temporary custody of L.B. to the paternal grandmother, J.R., under the protective supervision of the agency.[1] Effective July 24, 2012, protective supervision of L.B. was terminated, and appellee was awarded legal custody of L.B.

{¶ 4} On November 17, 2014, appellant filed the present motion for emergency and full custody. Appellant alleged that appellee contacted her and told her to come and get L.B. because he could not care for the child.

{¶ 5} A hearing on the motion was held on August 28, 2015. At the hearing, the guardian ad litem, appellant, and appellee testified.

---

[1] Temporary custody of appellant's other child, J.B., was awarded to maternal aunt, B.G. J.B. is not the subject of these proceedings.

2.

**{¶ 6}** The guardian ad litem testified that it was her recommendation that custody be awarded to appellant, with appellee to have liberal visitation. The guardian ad litem described appellant's home as appropriate, and stated that there were no safety concerns regarding the housing. She also testified that L.B. would be sharing a room with his older brother, J.B., with whom there had been inappropriate interactions in the past. However, the guardian ad litem testified that J.B. has matured, and that the two now enjoy spending time together. Regarding appellant's emotional stability, the guardian ad litem testified that based on her discussions with appellant, she feels that those issues have been resolved and would not prevent appellant from adequately caring for L.B. On cross-examination, the guardian ad litem admitted that she did not investigate what, if any, treatments or professional assistance appellant has engaged in to deal with her mental health issues.

**{¶ 7}** The guardian ad litem next expressed concern with appellee's personal relationships, in that he has lived with, and had volatile relationships with, a number of women that resulted in him and L.B. having to move frequently. The guardian ad litem counted that appellee has moved six times in the last two to three years. L.B., however, has only attended two different schools. In kindergarten, he was in the Lakota School District, and in first and second grade, he has been in the Clyde School District. The guardian ad litem acknowledged that L.B. was well-adjusted to his school, and was performing well. If custody of L.B. were to be awarded to appellant, L.B. would then

3.

attend school in the Port Clinton School District. The guardian ad litem also commented on appellee's alcohol usage, noting that while appellee still drinks alcohol, it no longer prevents him from going to work, and there have been no legal issues involving the use of alcohol.

{¶ 8} The guardian ad litem concluded that it would be in L.B.'s best interest to live with appellant. The guardian ad litem described L.B. as a sensitive and very loving child, and she wished for him to be in a stress-free environment, without arguing and fighting, which she believed would be with appellant. The guardian ad litem did comment, however, that she could not predict the future, and both parents have a history of instability.

{¶ 9} Appellant testified next. She testified that the main reason the court should award her custody of L.B. is that her home is more stable. Appellant testified that she has a close, loving relationship with L.B., and she described the activities they enjoy doing together and L.B.'s interests. She also described that when he is with her, L.B. enjoys the fact that he knows what the agenda is and what the expectations are for each day. Appellant further explained that there is not any fighting at her house, and that any issues are discussed instead of argued with raised voices.

{¶ 10} In contrast, appellant testified that appellee has had six different residences since he has had custody of L.B., and she was not always certain where she would be dropping off or picking up L.B. In addition, appellant testified that L.B. would become

4.

attached to the different women in appellee's life, and it impacts L.B. when those relationships end. Appellant then testified that as recently as the prior summer, appellee has called her on several occasions when he was drunk, and asked her to come take care of L.B. because he could not take care of him.

{¶ 11} Concerning her own mental health, appellant testified that she attempted suicide four or five years ago, but she is no longer in that state of mind or suffering from mental instability. Appellant explained that, at the time, she was going through a messy divorce, her father was sick with two different kinds of cancer, and her family did not get along because of the divorce. She stated that none of those issues were currently present in her life.

{¶ 12} Finally, appellant called appellee as a witness as upon cross-examination. Appellee described that he has dated a number of women in the past few years, and has stayed with them on occasion, but he has also had a permanent address where he lived. Appellee listed five different places where he has lived since being married to appellant, each one lasting for less than a year. Appellee testified that regardless of where they were, L.B. has always had his own bed in which to sleep. Appellee agreed that it probably was not appropriate parenting to have six women in his minor child's life in a two-year period.

{¶ 13} In addition, appellee testified regarding appellant's scheduled phone calls with L.B. Appellee stated that while he does not always answer appellant's calls because

5.

he may be at work, he does not ignore appellant's time to talk with L.B., and reschedules or works out a different arrangement for L.B. to talk with his mother.

{¶ 14} Appellee also acknowledged that he has called appellant and asked her to come pick up L.B. because he had been drinking. Appellee was not positive if he has done that on more than one occasion. He conceded that, at the time, it was probably not a stable environment for L.B. Relatedly, appellee testified that he had concerns that appellant may put L.B. in harm's way given her past suicide attempt, which occurred while the child was in the home. Appellee explained that he was not aware of any steps that appellant has taken to address the problem, and that he still feels concern that it may happen again.

{¶ 15} Following appellee's testimony on cross-examination, appellant moved to admit the guardian ad litem's report, and then rested.

{¶ 16} Appellee then testified on his own behalf. Appellee described his current living arrangement as a five-bedroom house on an acre of land. Appellee explained that he works in the construction industry, and there are times when there is a lot of work, and times when there is not as much work. When things got tight, appellee testified that he would move in with family members or friends to make sure that he could still provide for L.B. Appellee noted that appellant has not consistently paid child support, and that she owes over $2,700.

6.

{¶ 17} Appellee also testified that he does not believe that appellant would follow court orders regarding parenting time if she were awarded legal custody of L.B. Appellee described a recent event where he was returning from vacation, and appellant refused to give L.B. back to him, and the police became involved. Appellee also testified to an event in November 2014, where appellant picked up L.B. from school in the middle of the day and did not return him for two days.

{¶ 18} Regarding appellant's mental health, appellee testified that based on his 11 years of being married to her, he observed that appellant would self-medicate with prescription drugs and recreational drugs when things were not going the way she wanted them to go. Appellee further testified that appellant had attempted to commit suicide on three occasions between 2011 and 2012, and that the children were present on two of those occasions. Appellee expressed his concern over whether appellant has received any treatment, or how she could now determine that she does not have any mental health issues.

{¶ 19} Appellee concluded that it would be in L.B.'s best interests not to modify custody. Appellee explained that L.B. was well-adjusted to his school and community, and is active in school and has friends there. Appellee testified that he would be willing, and it would be in L.B.'s best interests, to allow appellant to have visitation one week on and one week off, provided that L.B. could remain in the same school.

7.

{¶ 20} Thereafter, appellee moved to admit L.B.'s report cards, and appellant's child support payment information. Appellee then rested.

{¶ 21} Following the hearing, the magistrate entered his decision on September 4, 2015. The magistrate found that, under R.C. 3109.04, there had been no change in circumstances regarding appellee or L.B. Specifically, the magistrate found that moving residences alone was not sufficient to demonstrate a change in circumstances, and that there was no testimony of any other change in circumstances. Therefore, the magistrate denied appellant's motion.

{¶ 22} On September 14, 2015, appellant objected to the magistrate's decision, arguing that it was contrary to law, against the manifest weight of the evidence, and an abuse of discretion. Further, appellant moved for leave to supplement her objection once the transcript from the hearing was filed. The trial court granted the motion for an extension, and allowed appellant 30 days after the transcript was filed to supplement her objection.

{¶ 23} The transcript was filed on December 10, 2015. On January 12, 2016, appellant filed her revised objection to the magistrate's decision, in which she argued that the magistrate's decision failed to consider the guardian ad litem's recommendation, incorrectly found that moving residences alone is not sufficient for a finding of change of circumstances, and erroneously concluded that there had been no change of circumstances.

8.

**{¶ 24}** On August 4, 2017, the trial court entered a judgment in response to appellant's subsequent "Motion for Emergency Temporary Custody of the Minor Child During the Pendency of this Action." Included in that judgment was a reference to appellant's objection to the magistrate's September 14, 2015 decision. The trial court stated that since the transcript was filed on December 10, 2015, appellant's objection was due on January 9, 2016. Because appellant did not file her objection until January 12, 2016, the objection was denied.[2] The trial court noted that it failed to document that decision in a standard fashion, and therefore clarified that "this Court does hereby formally deny the objection."

## II. Assignment of Error

**{¶ 25}** Appellant has timely appealed the trial court's judgment denying her objection to the magistrate's decision, and now asserts one assignment of error for our review:

>    1. The trial court abused its discretion in denying appellant's motion to modify the allocation of parental rights and responsibilities.

---

[2] Appellee claims that she filed her supplemental objection on Monday, January 11, 2016, which would have been timely because January 9, 2016, was a Saturday. However, the fax filing that she sent to the clerk's office was timestamped at 6:49 p.m., after the close of normal business hours.

9.

### III. Analysis

{¶ 26} Appellant and the trial court treated appellant's November 17, 2014 motion for emergency and full custody as arising under R.C. 3109.04, thus we will do the same. Pursuant to R.C. 3109.04(E)(1)(a),

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of the children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> * * *
>
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 27} Before analyzing whether a modification to the allocation of parental rights and responsibilities is in the child's best interest, the court must first determine whether a change in circumstances has occurred. *Perz v. Perz*, 85 Ohio App.3d 374, 376, 619

N.E.2d 1094 (6th Dist.1993). "The clear intent of [this requirement] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a 'better' environment." *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (10th Dist.1982).

{¶ 28} The Supreme Court of Ohio has held that the change of circumstances "must be a change of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). Further, the phrase "change in circumstances," generally denotes "an event occurrence, or situation which has a material and adverse effect upon a child." *Rohrbaugh v. Rohrbaugh*, 136 Ohio App.3d 599, 604-605, 737 N.E.2d 551 (7th Dist.2000). "In determining whether a 'change' has occurred * * * a trial judge must have wide latitude in considering all the evidence before him or her * * * and such a decision must not be reversed absent an abuse of discretion." *Flickinger* at 418, citing *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988).

{¶ 29} In support of her argument that there was a change of circumstances, appellant cites "[a]ppellee's interference with parenting time, appellee's deplorable living conditions, as well as numerous women in and out of the minor child's life, appellee's job instability, the child's absence(s) and tardies from school," as well as appellee's "inability to financially care for the minor child," "the constant moving of residences,"

11.

appellee's "failure to participate in any manner in the minor child's life," and the fact that appellee has contacted appellant on several occasions when he had been drinking to come and get the child. We will briefly address each contention in turn.

{¶ 30} Appellant cites appellee's interference with parenting time, however, appellee testified that although appellant's calls with L.B. are sometimes missed, they are not ignored, and other arrangements are made. Further, there was no testimony that appellant's physical visits with L.B. were frustrated by appellee. To the contrary, the testimony adduced at trial pertained to two occasions where appellant interfered with appellee's parenting time.

{¶ 31} Appellant next cites appellee's "deplorable living conditions." There is simply no evidence from the hearing to support this statement. Appellee testified that he is currently living in a five-bedroom house with plenty of room for L.B. To the extent that appellant is referencing appellee's previous residences, appellee testified that while L.B. may have had to share a room sometimes, he always had his own bed. Additionally, there was no testimony that any of the residences were unsafe or unsanitary.

{¶ 32} Regarding appellant's contention of job instability and inability to financially care for L.B., the record shows that while appellee has had up and downs as far as his volume of work, he has always been employed. Further, he testified that he has been able to financially care for L.B. despite appellant failing to make her child support payments.

12.

{¶ 33} Appellant also lists L.B.'s numerous absences and tardies from school as a change of circumstances. Again, the record does not support appellant's position. L.B.'s school records show that in kindergarten he was absent three days and tardy zero days, in first grade he was absent five and one-half days and tardy two days, and in second grade he was absent four days and tardy four days. Relatedly, appellant cites appellee's failure to participate in any manner in L.B.'s life. In support, appellant points to appellee's failure to attend any parent-teacher conferences. Appellee testified, however, that he did not physically attend the conferences, but that he spoke with the school and teachers on the phone.

{¶ 34} Finally, appellant cites appellee's numerous relationships with women, the constant switching of residences, and the fact that appellee has contacted appellant to come and get the child when he had been drinking. Here, the record supports appellant's assertions, as it is undisputed that appellee has had multiple relationships and has moved in and out of residences as those relationships have begun and ended. In addition, the guardian ad litem testified that the constant moving and conflict between appellee and these women have upset L.B. Finally, appellee admitted that, on at least one occasion, he has contacted appellant to come and pick up L.B. in the middle of the night because he had been drinking and could not take care of the child.

{¶ 35} However, the trial court found that these facts alone did not amount to a sufficient change of circumstances to warrant reexamining the custody determination.

13.

Ohio courts have routinely held that, "[A] relocation, by itself, does not constitute a change of circumstances." *E.g.*, *Valentine v. Valentine*, 12th Dist. Butler No. CA2004-01-024, 2005-Ohio-2366, ¶ 44. "A proposed move along with a finding that the move will harm the welfare of the children involved, however, can constitute a change of circumstances." *Id.* Here, the trial court did not find that the numerous moves materially affected L.B. Further, the trial court did not find that calling appellant to come and get the child on a couple of occasions constituted a change of circumstances. Given the wide latitude afforded to the trial court in these matters, we cannot say that the trial court's determination was an abuse of discretion.

{¶ 36} Accordingly, appellant's assignment of error is not well-taken.

### IV. Conclusion

{¶ 37} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Sandusky County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
Thomas J. Osowik, J.                     JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.