# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
JEFFERSON COUNTY

IN THE MATTER OF:

N.W.F.,

MINOR CHILD.

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 JE 0030**

Civil Appeal from the
Court of Common Pleas, Juvenile Division, of Jefferson County, Ohio
Case No. 2010-PA-00184

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, David A. D'Apolito, Judges.

**JUDGMENT:**
Reversed and Remanded.

*Atty. Mary F. Corabi*, 424 Market Street, Steubenville, Ohio 43952, for Appellee.

*Atty. Kristopher Haught*, and *Atty. Bernard C. Battistel*, Scarpone and Associates, 2021 Sunset Blvd., Steubenville, Ohio 43952, for Appellant.

Dated: September 30, 2019

**WAITE, P.J.**

{¶1} Appellant-mother, P.L.L. appeals the November 27, 2018 Jefferson County Common Pleas Juvenile Division judgment entry granting residential custody of the child in this case to Appellee-father, W.G.F. In so doing, the court overruled the magistrate's decision in this matter, who had denied father's motion for parental rights filed in response to Appellant's motion to modify parenting time. The trial court judge granted the motion and awarded custody of the child to father. Based on the following, the record reveals no change in circumstances and the judgment of the trial court is reversed and the matter is remanded for further proceedings consistent with this Opinion.

Factual and Procedural History

{¶2} The parties in this matter were never married. The minor child had resided with Appellant since birth. In 2014, Appellant did marry, and moved with her husband and the child from Jefferson County, Ohio to Fort Drum, New York where stepfather was stationed. At the time, Appellee expressed some concern about the move from Jefferson County to New York, but never filed an objection with the juvenile court. On May 1, 2018, Appellant again filed a notice of her intent to relocate with the child. This time, Appellee filed a motion for reallocation of parental rights, seeking residential custody of the minor child.

{¶3} A hearing on the matter commenced on August 21, 2018. According to Appellant's testimony at the hearing before the magistrate, Appellant and stepfather were informed in early January or February of 2018 that stepfather was required to transfer from Fort Drum to another U.S. Army military base. (8/21/18 Tr., p. 7.) According to the record, transfer options included bases in Germany, Hawaii, Alaska and Texas. (8/21/18 Tr., p. 8.) It was eventually determined that he was to transfer to a base near El Paso,

Texas.  The transfer would not include a raise in pay for stepfather, but it would change his rank from light infantry to a member of a mechanized unit, with an opportunity for advancement.  (8/21/18 Tr., p. 8.)  During this hearing, the magistrate conducted an in camera interview with the child.  On August 28, 2018, the magistrate issued a lengthy judgment entry, concluding:  (1) the parties have always cooperated with visitation and there had been no previous motions filed with the trial court over custody or parenting time issues; (2) the minor child enjoys living with the child's mother, stepfather and stepsister and was looking forward to the move to Texas; (3) the child had a loving relationship with Appellee; and (4) the evidence revealed that the move would not have a "material effect" on the child.  The magistrate correctly stated that relocation, alone, is never enough to qualify as a change of circumstances, and determined that none of the factors regarding change of circumstances had occurred.  The magistrate concluded that it was in the child's best interest to remain in the custody of Appellant.  The parties agreed that Appellee would be granted extensive long distance visitation to attempt to replicate the length of visitation he had been enjoying since 2014.

{¶4}  On September 11, 2018, Appellee filed objections to the magistrate's decision.  Appellee raised four specific objections to the decision.  First, Appellee contended that the magistrate erred in concluding the move to Texas would not have a material effect on the child.  Appellee cited testimony at the hearing that the child had difficulty adjusting to school in New York.  Appellee also raised his own testimony that he had visited the child at least 93 days a year and that there were no other relatives in Texas, as all of them were in Ohio.  Appellee contended that travel time for visits would increase from seven hours to a day and a half.  Appellee also complained that the move

to Texas was for purely personal reasons, as Appellant's husband simply wanted to be on the same base as a friend and would not benefit by an immediate raise in income.

{¶5} Appellee's second objection was the trial court failed to consider that the bond between the father and child will be threatened by the distance of the move and passage of time.

{¶6} Appellee's third objection argued the trial court failed to consider that the move will negatively impact the child's school performance because of the adjustment to a new school and new friends.

{¶7} Appellee's fourth objection was that the magistrate failed to determine that based on all of the circumstances, this move amounted to a change in circumstances. Appellee relied heavily on the fact that Ohio is not new to the child but that Texas would be a new environment.

{¶8} On November 13, 2018, Appellee filed a motion seeking for the trial court judge to have an in camera interview with the child. A hearing on the objections was held on November 19, 2018 and the parties were present with counsel. No new testimony was entered but counsel for both parties argued their positions to the trial court. At the conclusion of the hearing, the judge conducted an in camera interview with the child.

{¶9} On November 27, 2018, the trial court issued a judgment entry. The trial court recited the facts found by the magistrate but stated:

At paragraph 10 the Magistrate concluded that the move to "Texas will not have a material effect on the minor child". That simple conclusion was not explained or analyzed by the Magistrate in any way. The fact of the matter is that the move will affect the minor child in material ways.

The first adverse effect is that which accompanies almost any move. It caused problems with the move from Jefferson County to Syracuse, New York necessitating counseling for the child. Another move can't do him any good. This however seems to be the kind of problem that Courts have downplayed. In this case however there are more.

The child in this case visited with his father often and regularly even from Syracuse. The child was with the father 101 days last year, 99 days the year before and 93 days the year before that. That is not possible from Texas. In all of that time spent with [the child's] Father, [the child] was able to associate with his extended family, all of whom live in Jefferson County. The move costs [the child] not only access to [the child's] Father but also access to [the child's] extended family none of whom live in the vicinity of El Paso, Texas.

Syracuse, New York was a seven-hour drive that could be made on two tanks of gas. Transportation to and from El Paso is about $1,000 each way and involves an all-day ordeal when one considers door-to-door time. That is, one must leave home and get to the airport generally two hours before the flight. Then there is the flight and maybe a lay-over and another flight and then there is the car trip to the final destination. For [the child], what was a seven hour car ride with a parent becomes an all day ordeal much of which is spent in the air or in airports * * * or with a stranger hired for the purpose.

Case No. 18 JE 0030

[The child's] visitation with [the child's] Father is important in this case. Not only does [the child] associate with [the child's] Father and also [the child's] extended family with access to both sides even though the Mother's family rarely takes advantage of this access. More importantly the things [the child] likes to do and the people that he likes to do them with are in Jefferson County.

The Magistrate found that paragraph 9 "the child enjoys living with his Mother, Stepfather and Stepsister and is looking forward to the move." While [the child] does have a good relationship with [the child's] Mother and Stepfather and Stepsister [the child] does not want to be in Texas. During the interview [the child] was asked what [the child] likes to do and [the child] named off a number of activities. The Court then asked [the child] who [the child] does them with and for each activity [the child] stated * * * Father and * * * "Stepmother". The Court specifically asked [the child] what [the child] did in Syracuse and [the child] stated that [the child] played in the snow, rode [the child's] bike and played with friends, none of which involved the adults in [the child's] life. The Court then asked [the child] what [the child] enjoys about Texas and [the child] responded "riding my bike". Again there was no indication of activities that he does with [the] Mother or Stepfather even though [the child] does love them both. Finally, [the child] stated that [the child] wanted to stay with [the child's] Father which was not surprising given the balance of the interview.

While the best interest of the parents is no part of the test the Court feels compelled to discuss it. * * *

The transfer of [Appellant's] husband was <u>optional</u> with him. He is moving to a base to which his best friend just moved. His pay and rank will be the same and Appellant's pay will actually be less than she makes now. It has been suggested that the move is partially motivated by the desire of [Appellant's] husband to learn mechanical maintenance. But every base has vehicles and equipment that need to be maintained and it would seem that the primary objective here is for [Appellant's] husband to be with his best friend. The next question becomes, "What's in it for [the child]?"

[The child] gives up constant contact with [the child's] very involved Father and extended family and leaves the place where [the child] wants to be so that [the child's] Stepdad can be with his best friend. The cost is all on [the child's] side and [the child] receives none of the benefit.

In light of the foregoing the Court finds that there has been a change in circumstances of the child and the child's residential parent and that a modification is in the best interest of the child. The Court further finds that the harm likely to be caused by a change in environment, back to one with which the child is familiar, is far outweighed by the advantages of that slight change in as much as it avoids the change to another unfamiliar environment and allows [the child] constant access to a parent and

extended family and allows [the child] to be where [the child] wants to be with the people who interact with [the child] the most. (Footnotes omitted.)

(11/27/18 J.E., pp. 3-5.)

{¶10} The trial court held that the move did amount to a change of circumstances and that it was in the best interest of the child to grant Appellee-father residential parent status, finding that the harm caused by this change would be "diminis" [sic] compared to the advantages to the child.

{¶11} On December 27, 2018, Appellant filed a motion for a stay with the trial court pending appeal. This motion stated that the minor child had resided with Appellant since birth and had moved to Texas with Appellant in August of 2018 and was enrolled in school in Texas. Moreover, Appellant argued that absent a stay of the trial court order, the child would be forced to move to Ohio and enroll in yet another new school. Appellee filed a response to the motion to stay on January 2, 2019, alleging that the child expressed the desire to reside in Jefferson County and confusingly stated that the child was currently "enrolled in the same school he began when he resided in Jefferson County for the first four (4) years of his life." (1/2/19 Response to Plaintiff's Motion to Stay.) The statement is confusing since it is apparent the child would not have been enrolled in an Ohio school due to the age at the time. The trial court overruled the stay, without explanation, in a judgment entry dated January 22, 2019. No stay was sought in this Court.

{¶12} On February 13, 2019, the trial court issued another judgment entry. While acknowledging that the issue of custody was on appeal to this Court, the trial court ordered that,

> Effective November 27, 2018, the [Appellee], is designated the residential parent and legal custodian of the minor child[.]
>
> Effective November 27, 2018, the child support obligation of the [Appellee] is hereby terminated.

(2/13/19 J.E.)  Although the trial court has continuing jurisdiction on matters of custody and child support, the court was without jurisdiction to issue this judgment entry once a notice of appeal was filed.  Generally, a trial court loses jurisdiction to issue orders in a matter once a direct appeal has been taken.  *State ex rel. Special Prosecutors v. Judges,* 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1978).  Where a trial court issues an order without having jurisdiction to do so, the court of appeals may properly vacate that order. *Cincinnati School Dist. Bd. of Ed. v. Hamilton Co. Bd. of Revision,* 87 Ohio St.3d 363, 368, 721 N.E.2d 40 (2000).  Appellant filed this timely appeal on December 27, 2018. The trial court issued the judgment entry in question on February 13, 2019.  Based on the record, the trial court was without jurisdiction to render a judgment at that time.  Therefore, the trial court's February 13, 2019 judgment entry is void for lack of jurisdiction.

{¶13}  We also note that throughout the proceedings below the court repeatedly refers to the minor child by name, both at hearings and in written judgment entries.  It has been a longstanding practice to protect the identity of minor children in most legal matters, including all family law matters.  A court must take the utmost care to protect the identity of minor children at all levels of legal proceedings.  References to minor children by name at hearings and in written judgment entries should be avoided whenever possible.

ASSIGNMENT OF ERROR

Case No. 18 JE 0030

THE JEFFERSON COUNTY COURT OF COMMON PLEAS ERRED IN FINDING THAT A CHANGE IN CIRCUMSTANCES OCCURRED.

{¶14} In her assignment of error, Appellant contends the trial court erred in finding a change in circumstances had occurred, warranting the decision to grant residential parent status to Appellee.

{¶15} The standard of review for matters concerning child custody is whether the trial court committed an abuse of discretion. *Davis v. Flickinger,* 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159 (1997). When a trial court's determination in a custody matter is supported by a substantial amount of competent and credible evidence, it will not be reversed absent an abuse of discretion. *In re Dissolution of Marriage of Early v. Early,* 7th Dist. Columbiana No. 15 CO 0015, 2016-Ohio-8413, ¶ 17, citing *Bechtol v. Bechtol,* 49 Ohio St.3d 21, 550 N.E.2d 178 (1990), syllabus. An abuse of discretion connotes the trial court's judgment was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶16} A trial court has discretion to issue an equitable judgment based upon the facts and circumstances of each case. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). However, while the discretion of the trial court is broad, it is not absolute, and must be guided by the provisions of R.C. 3109.04. *Miller v. Miller,* 37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849 (1989).

{¶17} R.C. 3109.04(E) governs the modification of a prior decree in which parental rights and responsibilities were allocated. It provides:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that

have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

R.C. 3109.04(E)(1)(a).

{¶18} Therefore, three elements must exist before a trial court may properly modify an existing parenting decree: (1) there must be an initial finding that a change of circumstances has occurred; (2) if such a change of circumstances exists, the modification of custody must be in the child's best interest; and (3) any harm to the child

from a modification of custody must be outweighed by the advantages of the modification. *Rohrbaugh v. Rohrbaugh,* 136 Ohio App.3d 599, 604, 737 N.E.2d 551 (7th Dist.2000). The record in the case must support each of the three findings, or modification of custody is contrary to law. *Davis* at 417. Moreover, the language of R.C. 3109.04(E)(1)(a) creates a rebuttable presumption that retaining as residential parent the parent designated in the prior decree is in the child's best interest. The statute specifically states that a trial court shall not modify a prior existing decree unless the three statutory provisions have been met. See *Rohrbaugh* at 604.

{¶19} In the instant matter, the trial court specifically concluded that Appellant's relocation to Texas would "affect the minor child in material ways" and constituted a change in circumstances sufficient to justify a modification of the prior parenting decree. Therefore, we must determine whether the record supports this conclusion or whether the trial court abused its discretion when it made this determination.

{¶20} Citing *Vincenzo v. Vincenzo,* 2 Ohio App.3d 307, 441 N.E.2d 1139 (11th Dist.1982), Appellant argues that the trial court's conclusion that a change of circumstances occurred based solely on Appellant's relocation to Texas is contrary to law and the record does not support the trial court's conclusion. Appellee acknowledges that relocation, in itself, is not sufficient to constitute a change of circumstances but urges that the record demonstrates Appellant's relocation will have harmful effects on the minor child.

{¶21} The issue of relocation of a parent in a custody matter is not new. We again note that, first and foremost, a strong presumption exists in favor of retaining the existing residential parent. *Williamson v. Williamson*, 7th Dist. Jefferson No. 16 JE 0022, 2017-

Ohio-1082, 87 N.E.3d 676 ¶ 11. R.C. 3109.04(E)(1)(a) creates a rebuttable presumption that it is in the child's best interest to retain the residential parent designated in the prior decree. In this matter the minor child has lived with Appellant his entire life. Appellee enjoyed extensive visitation with the child, over 90 days of visitation a year beginning with Appellant's move to New York in 2014, to which no formal objections were filed. Appellee had the burden of overcoming the statutory presumption in establishing that a change of circumstances occurred warranting a change in residential parent. It is axiomatic that relocation alone does not constitute a change of circumstance. As we have recently held, "relocation, by itself, is not sufficient to be considered a change in circumstances, but it is a factor in such a determination." *Williamson,* ¶ 25. Our sister districts have consistently also held that relocation alone will not be sufficient to overcome the presumption of retaining a residential parent and does not constitute a change of circumstances. See *Jillian F. v. Curtis C.,* 5th Dist. Tuscarawas No. 2018 AP 04 0016, 2018-Ohio-5373 (other factors beyond relocation such as parent's emotionally abusive behavior toward the child warranted a finding of a change of circumstances); *In re L.B.*, 6th Dist. Sandusky No. S-17-028, 2018-Ohio-1957, ¶ 35 (multiple relocations by a parent did not alone constitute a change of circumstances to reallocate parental rights); *Valentine v. Valentine,* 12th Dist. Butler No. CA2004-01-024, 2005-Ohio-2366, ¶ 45 (relocation is a change of circumstances because it would virtually sever the minor child's relationship with the nonmoving parent); *Trudell v. Trudell,* 3rd Dist. Hancock No. 5-11-47, 2012-Ohio-5023, ¶ 20 (where the record contains evidence that both parents have a good relationship with the child, relocation alone is not sufficient to overcome the presumption that the residential parent should remain intact); *In re S.M.T.,* 8th Dist. Cuyahoga No. 97181 2012-

Ohio-1745, ¶ 23 (relocation is not a change of circumstances where a parent is a member of the military and relocation is always a possibility.)

**{¶22}** The Eleventh District has noted on the issue of relocation, "since a child is almost always going to be harmed to some extent by being moved, the non-custodial parent should not be able to satisfy his or her burden simply by showing that some harm will result; the amount of harm must transcend the normal and expected problems of adjustment." (Emphasis deleted.) *Schiavone v. Antonelli,* 11th Dist. Trumbull No. 92-T-4795, 1993 WL 548034, *4 (Dec. 10, 1993).

**{¶23}** Appellant was the residential parent of this child since birth. The prior decree, dated January 5, 2015, granted Appellant residential parent status and granted long distance visitation to Appellee. At the time, Appellant had relocated to New York due to her husband's duties as a member of the U.S. Army. Appellee never filed any motion with the trial court objecting to Appellant's move to New York nor did he seek reallocation of parental rights because of the move to New York. Appellee did not contest the child's move from Jefferson County, Ohio to New York in any way.

**{¶24}** In addressing Appellee's objections to the magistrate's decision, the trial court restated the magistrate's decision, including certain facts and relevant caselaw. However, the trial court took issue with the magistrate's determination that the relocation would not have a material effect on the minor child. The trial court concluded that assertion was not supported by the record and determined the record supported the opposite conclusion. The trial court proceeded to list the adverse effects on the relocation of the minor child to Texas. The first adverse effect was "that which accompanies almost any move," noting that the move from Jefferson County to New York when the child was

four years old required counseling for the child. This conclusion is not supported by the record. The testimony at the hearing was not that the relocation to New York was a problem for the child. The testimony at hearing indicated that only when the child began to go to school did he begin to have difficulties. Contrary to Appellee's statement, the child was not old enough to attend school while he resided in Jefferson County. This record reveals that it was the beginning of a school career, and not the relocation to New York, which caused difficulty for the child. Again, the trial court did acknowledge that any move will require an adjustment to new surroundings.

**{¶25}** The second adverse effect cited by the trial court was the distance of the move and the affect that would have on visitation with Appellee and the child's extended family. The child had spent several days with Appellee in each of the three successive years: 101 days the year prior; 99 days the year before that and 93 days the year prior to that. The trial court noted that extended family on both sides live in Jefferson County and none live in Texas. The record shows, however, that while the distance of the move was greater, the recommended parenting time schedule proposed by the magistrate was quite generous. The magistrate acknowledged the amount of visitation Appellee had regularly been exercising with the child while the child was in New York. Hence, the proposed parenting time order included extended weekend visitations for four months out of the year; every Thanksgiving school holiday and alternating Christmas holidays; extended spring break visitation every year; eight weeks of summer visitation every year; any visitation in Texas of Appellee's choosing with a two-week notice; and the requirement that any time Appellant was in Ohio where her extended family resides, she was to notify Appellee and provide for visitation. This structure would provide Appellee

with nearly the same amount of visitation he had been enjoying for the previous four years without incident. The summer visitation alone would constitute approximately 57 days with every spring break, Thanksgiving, extended weekends for a quarter of the year filling in the rest. Moreover, just as the minor child had done when living in New York, any visitation with Appellee would provide the opportunity to visit extended family.

{¶26} In part, the trial court was concerned that the distance of the move contributed to a great difference in travel time to Texas, versus Appellee's regular travel to New York. While it is true that the distance to Texas from Ohio is greater than to New York, both are within the continental United States. While the trial court was correct that father would undoubtedly be inconvenienced by the move to Texas, we again are cognizant that long distance travel is part and parcel of any relocation. The caselaw on this issue is clear. The amount of harm must transcend the "normal and expected" problems of relocation. See *In re C.R.W.,* 7th Dist. Jefferson No. 19 JE 0002, 2019-Ohio-2642, wherein this Court concluded that the mother's relocation to Japan, on another continent and with many cultural differences, constituted a sufficient change in circumstances. The record also shows that of all the possible bases to which stepfather may have transferred, Texas was the closest in distance.

{¶27} The trial court also asserts that during the in camera interview the minor child mentioned preferred activities that all occurred at Appellee's residence with Appellee, whereas the activities discussed at Appellant's home were all solitary activities. Not only does this conclusion by the trial court inject a separate issue of fitness of parenting or level of involvement of a parent into the determination, which is outside of the statute and involves different levels of evidence, it is also not supported by the record.

In the earlier interview with the minor child by the magistrate the child expressed excitement at the prospect of living with Appellant in Texas and that the child would have the ability to engage in many outdoor activities because of the absence of a cold winter season. The child also told the magistrate that one of the activities enjoyed was watching and engaging in football with stepfather. During the trial court's in camera interview the minor child was asked a number of questions and expressed a natural desire to live close to both parents, and to spend time not only with the child's sister but also with extended family who live in Ohio. None of the statements made by the child in either the magistrate's or the court's interview were outside the normal experience of a child where the parents live separately, or of any child relocating to a new environment. The characterization by the trial court that the activities engaged in by the child at Appellee's home were more family oriented are not supported by the record and would not be relevant to the issue in this matter, which is to determine whether this relocation transcends the ordinary move and would constitute a change in circumstances.

**{¶28}** Finally, the trial court discusses "the best interest of the parents," which the court acknowledges should not be considered as part of the statutory analysis but is clearly central to the court's determination. The trial court relies heavily on the belief that Appellant's husband chose to move to the new base to be with a friend, and not for any more important reason, such as better pay. While the court recognizes that Appellant and stepfather explained that the move to Texas was for stepfather to advance in mechanical maintenance, the trial court minimizes this explanation, stating "every base has vehicles and equipment." The judge apparently believes this was a purely pretextual

reason and the desire for stepfather to live near his friend is the true reason. During the hearing on the objections to the magistrate's decision the trial court stated:

> Well, and understand this, and Courts of Appeals gets confused on this too, the test here is the best interest of the child, not the best interest of some step-dad, not the best interest of mom, not the best interest of dad.
>
> * * *
>
> I mean, I don't -- I don't -- I don't see some big benefit to going to Texas. Now, I'll look in the testimony and maybe there's testimony of some big benefit. As I sit here I don't see the benefit but I'm going to read all the testimony and find out.

(11/19/18 Tr., pp. 23-24.)

{¶29} Regardless of which reason is Appellant's true reason for choosing Texas, this record shows that stepfather was required to relocate from New York, and Ohio was not an option. Hence, the reasons for choosing one base over another have no bearing on this case. Again, the issue before the court was whether the proposed relocation in this matter rises to the level of a change in circumstances and whether modification of parental rights was warranted pursuant to R.C. 3109.04.

{¶30} The record before us is completely devoid of any indication that there have been any parenting issues between the parties at any time, including the four years that Appellant resided in New York with the child. There have been no allegations of alienation, interference with visitation, or any parenting issues regarding this child. The

sole variable which has occurred between the parties is the proposed relocation of the child to another base because stepfather is a member of the military. Stepfather's status as a member of the military was known to all parties at the time of the initial determination on custody and no issues were raised in the move to New York. There is no medical testimony or evidence of psychological distress, physical coping issues, or other more serious concerns in this matter warranting a deviation from the rebuttable presumption that Appellant is to maintain residential parent status. There is no evidence that the move is for the purpose of limiting Appellee's ability to spend time with the child. To the contrary, Appellant agreed to substantial visitation time between the child and Appellee, which would correspond with approximately the same amount of parenting time Appellee has been enjoying. There have been no contempt motions filed between the parties in the intervening years or any evidence presented that there has ever been interference with visitation by Appellant. Appellee never objected to Appellant relocating with the child to New York and no motions were filed in Jefferson County for the several years the child resided in New York.

**{¶31}** While the distance of the proposed move will unquestionably inconvenience father and make visitation more cumbersome and expensive, relocation by itself, with nothing more, does not constitute a change of circumstances. The trial court's analysis and concern that this child's relationship with father may suffer is commendable, but the record reveals that his concern that great harm would occur appears entirely speculative. Not one relevant fact exists in this record to show that this relocation is so greatly outside of the norm in the harm it poses to the child that it rises to a change in circumstances. In our review we are mindful that the harm that must be shown in order to overcome the

presumption that the child's custody should remain with mother is harm to the child. We are not to consider harm to mother, father, or extended family. The record in the matter demonstrates that both parties love this child, have utilized parenting time appropriately, and have incorporated the child into their respective families. Clearly, father does not want to be more inconvenienced in exercising visitation and has been an active parent in this child's life. However, despite the trial court's characterization, the record does not support a deviation from the rebuttable presumption that Appellant maintain custody of the child as she has from birth. This record does not reveal that any change of circumstances has occurred. The trial court erred in concluding that, based on Appellant's relocation to Texas, a change of circumstances occurred in this matter sufficient to order a change of parental rights.

{¶32} For the above reasons, Appellant's assignment of error has merit and is sustained. The judgment of the trial court is reversed and the matter remanded for the trial court to conduct any further necessary orders consistent with this Opinion.

Donofrio, J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is reversed. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**